Kevin Gerard O'Grady
Law Office of Kevin O'Grady, LLC
1164 Bishop Street, Suite 1605
Honolulu, Hawaii 96813
(808) 521-3367
Hawaii Bar No. 8817
Kevin@KevinOGradyLaw.Com

Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA  92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| COREY KAHALEWAI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| HONOLULU CITY AND COUNTY | ) Civil Action No. _____ |
| | ) VERIFIED COMPLAINT |
| Defendant | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |

## <u>VERIFIED COMPLAINT FOR DECLARATORY<br>AND INJUNCTIVE RELIEF</u>

COME NOW the Plaintiff, COREY KAHALEWAI, by and through his undersigned counsel, and complains of the Defendant as follows:

## <u>I</u>

## <u>PARTIES</u>

**Plaintiff**

1.  Plaintiff Corey Kahalewai (Kawalewai) is a natural person, an adult male resident of the State of Hawaii and resides in Honolulu County and is a citizen of the United States. But for the actions challenged in this lawsuit, he would have a carry concealed permit, hereinafter "CCW";

**Defendant**

2.  Defendant City and County of Honolulu ("County") is a municipal corporation incorporated under the laws of the State of Hawaii. County is authorized by law to control and maintain the Honolulu Police Department, an agency of the County, who acts on County's behalf in the area of law enforcement.  County is therefore ultimately responsible for Honolulu Police Department ("HPD"), and their actions, and therefore, must assume the risks incidental to the maintenance of HPD, their employees, laws, customs and policies. County can be served by serving the Department of the Corporation

Counsel, Honolulu County at 530 South King Street, Suite 110, Honolulu,

Hawaii 96813;

## II

## JURISDICTION AND VENUE

3.  This Court has subject matter jurisdiction over this action pursuant to 28

U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983 and § 1988;

4.  Venue lies in this Court pursuant to 28 U.S.C. § 1391;

## III

## INTRODUCTION

5.  This action challenges the constitutionality of County Honolulu Police

Department Rules regarding the granting or denial of CCW permits that

make it extremely difficult, if not outright impossible or impermissibly

time consuming, for Plaintiffs to obtain permits to carry a concealed firearm

in public and therefore to exercise their right to be armed in public, as

guaranteed by the Second Amendment's text "bear arms," and as recognized

and reaffirmed by the Supreme Court in *New York State Rifle & Pistol Ass'n,*

*Inc. v. Bruen*, 142 S. Ct. 2111 (2022);

6.  The main policies, actions, and customs that Plaintiff targets and alleges

are unconstitutional here are

A- The use of discretion in the issuance of CCW;

B- The denial of CCW based upon prior investigations, as described herein;

C- The denial of CCW based upon prior restraining orders, as described herein;

D- The denial of CCW based upon previously being a suspect in a criminal investigation;

E- The denial of CCW based upon allegations that did not result in a conviction;

F- The denial of CCW based upon allegations that did not result in a criminal charge;

G- The denial of CCW based upon allegations that did not result in a judicial finding of dangerousness at the time of the CCW denial;

H- Defendant's Honolulu Police Department Rules of the Chief of Police Rules §21-15-19(f)(1), (4), (5), and §21-15-25(b);

 I- The denial of CCW based upon circumstances listed in paragraphs A, B C, D, E, F, G and or H above individually and or in combination;

7.  In anticipation of bad-faith efforts to obstruct its ruling in recalcitrant jurisdictions, the *Bruen* Court expressly invited challenges such as this one, noting that, "**because any permitting scheme can be put toward abusive ends, we do not rule out constitutional challenges to shall-issue regimes where, for example, lengthy wait times in processing license applications**

or exorbitant fees deny ordinary citizens their right to public carry." *Id*.

(emphasis added).  The policies that Plaintiff challenges have gone far

beyond "abus[ing]"constitutional rights. Defendant has flat-out denied

Plaintiff his right to be armed outside of his home by establishing an

onerous permitting regime replete with subjective and discretionary

decisions, poll tax-like fees, and as applicable to this lawsuit, discretionary

decisions that rely on unconstitutional reasons to deny applicants their CCW

permits and designed to flout the Supreme Court's precedents.

8) County has not gotten the United States Supreme Court's message from

*Bruen.*  Prior to *Bruen*, County had treated, for more than a century, the

Second Amendment as dead, buried and forgotten having almost never

issued any concealed carry permits[1].  Once *Bruen* was decided and county

police chiefs began to issue a trickle of concealed carry permits, under new

county specific onerous carry concealed permit regulations, County acted to

ensure that even if people managed to overcome the burdensome

requirements to actually obtain a concealed carry permit, the permits would

be issued so rarely as to be rendered utterly useless.  County merely

switched gears from almost never issuing any concealed carry permits so

---

[1] And apart from armored car drivers, open carry permits are not issued to private
citizens

that there was no one with a permit, to issuing permits so rarely and denying applications based on unconstitutional bases and through the use of discretion that it has essentially kept the permitting system the same as it was prior to *Bruen*- completely discretionary.  Notwithstanding the United States Constitution and the Second Amendment and the *Bruen* decision, County just simply does not want anyone to be able to carry a firearm anywhere within the state[2], - which is their fundamental, ancient, constitutionally protected and guaranteed right[3].

9. For purposes of all Counts and Claims the Defendant has acted under "color of state law" within the meaning of Section 1983.

## IV

## STATEMENT OF LAW

## A

## SECOND AMENDMENT

---

[2] See https://www.youtube.com/watch?v=W9isk7CACvg&t=6621s, https://www.hawaiinewsnow.com/2024/05/03/waianae-coast-residents-air-crime-concerns-mayors-town-hall/?fbclid=IwZXh0bgNhZW0CMTAAAR2_aivpO-uT5YeRdB8cRX8GCFWTalrBLZjSxZEgI2_BXZvrVVbHlr_beOg_aem_HOkcvXhdi6QQICzidSFJTw.

[3] County has essentially limited unconcealed carry to guards and private detectives. So here County has focused its efforts to destroy the only way the common man can carry in County, concealed.  To that end County just denies applications by using "discretion" and basing decisions on unconstitutional bases effectively continuing to deny Plaintiff and other applicants their Second Amendment rights.

10.  The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed.";

11. The Second Amendment guarantees individuals a fundamental right to keep and carry arms for self-defense and defense of others in the event of a violent confrontation. *District of Columbia v. Heller*, 554 U.S. 570 (2008); *McDonald v. Chicago*, 561 U.S. 742 (2010); *Caetano v. Massachusetts,* 577 U.S. 1027 (2016);

12.  Firearms are protected by the Second Amendment. *District of Columbia v. Heller*, 554 U.S. 570 (2008);

13.  The Second Amendment is applicable to the States as incorporated through the Due Process Clause of Fourteenth Amendment because the right to "keep and bear Arms" is a fundamental constitutional right essential to ordered liberty. *McDonald v. City of Chicago*, 561 U.S. 742 (2010). "[T]he Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *District of Columbia v. Heller*, 554 U.S. 570, 582 (2008).  The Fourteenth Amendment to the United States Constitution provides in pertinent part: No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any

state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws;

14. "[T]he Second Amendment guarantees a general right to public carry," meaning ordinary, law-abiding citizens may "'bear' arms in public for self-defense." *Bruen*, 142 S.Ct. at 2135;

15. *Heller* established a "text, history, and tradition" framework for analyzing Second Amendment questions. *See Bruen*, 142 S. Ct. at 2127-29, citing *Heller*, 554 U.S. at 634. Under that framework, the *Heller* Court assessed historical evidence to determine the prevailing understanding of the Second Amendment at the time of its ratification in 1791. Based on that assessment, the Court concluded that the District of Columbia statute which prohibited possession of the most common type of firearm in the nation (the handgun) lacked a Revolutionary-era tradition, did not comport with the historical understanding of the scope of the right, and therefore violated the Second Amendment;

16. In *Bruen*, the Supreme Court held unconstitutional New York's "good cause" licensing requirement because a State may not condition the right to publicly carry handguns on a citizen's "special need for self-defense." *Bruen*, 142 S.Ct. at 2135 n.8;

17.  The "general right to public carry" cannot be restricted absent "*exceptional* circumstances." *Bruen*, 142 S. Ct. at 2156 (emphasis added). This is because the Second Amendment "presumptively protects" carrying firearms. *Id.* At 2129. To determine whether a state's restriction is constitutional, the Court in *Bruen* explained that "the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." 142 S.Ct. at 2129;

18.  It is the State's burden to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." 142 S.Ct. at 2127; *see also id.* At 2150 ("[W]e are not obliged to sift the historical materials for evidence to sustain New York's statute. That is respondents' burden."). If the State fails to meet its burden, then the State's restrictions must be enjoined;

19.  The *Bruen* Court struck down as unconstitutional New York's "proper cause" requirement for issuance of a permit to carry a handgun in public. In doing so, *Bruen* explicitly rejected New York's attempt to justify its restriction as analogous to a historical "sensitive place" regulation. 142 S.Ct.

at 2133-34. The Court explained that a state may not simply ban guns wherever people may "congregate" or assemble. A rule that "expand[ed] the category of 'sensitive places' simply to all places of public congregation that are not isolated from law enforcement defines the category of 'sensitive places' far too broadly." 142 S.Ct. at 2134. As the Court explained, "[p]ut simply, there is no historical basis for New York to effectively declare the island of Manhattan a 'sensitive place' simply because it is crowded and protected generally by the New York City Police Department." *Id;*

20.  It has long been established that a State may not impose a penalty upon those who exercise a right guaranteed by the Constitution. *Frost & Frost Trucking Co. v. Railroad Comm'n of California*, 271 U.S. 583, 593-94 (1926).  "Constitutional rights would be of little value if they could be . . . indirectly denied" (*Smith v. Allwright*, 321 U.S. 649, 664 (1944)), or "manipulated out of existence." *Gomillion v. Lightfoot*, 364 U.S. 339, 345 (1960). "Significantly, the Twenty- Fourth Amendment does not merely insure that the franchise shall not be 'denied' by reason of failure to pay the poll tax; it expressly guarantees that the right to vote shall not be 'denied or abridged' for that reason." *Harman v. Forssenius*, 380 U.S. 528, 540 (1965) (citation omitted). Thus, like the Fifteenth Amendment, the Twenty-Fourth "nullifies sophisticated as well as simple-minded modes" of impairing the

right guaranteed. *Lane v. Wilson*, 307 U.S. 268, 275 (1939). " 'It hits onerous procedural requirements which effectively handicap exercise of the franchise by those claiming the constitutional immunity.' " *Harman*, 380 U.S. at 540-41 (citations omitted), quoting *Lane*, at 275;

21.   *Bruen* further establishes several requirements to determine whether a historical regulation is sufficiently analogous. First, the relevant time period for the historical analogue must be the Founding, centering on 1791. *Bruen*, 142 S.Ct. at 2135-36. That is because " '[c]onstitutional rights are enshrined with the scope they were understood to have when the people adopted them.' " *Bruen*, 142 S.Ct. at 2136, quoting *District of Columbia v. Heller*, 554 U.S. 570, 634-35 (2008).   "20th century and late 19th century statutes and regulations "cannot provide much insight into the meaning of the Second Amendment when it contradicts earlier evidence." *Bruen*, 142 S.Ct. at 2154 & n.28;

22.   Thus, restrictions on the right to keep and bear arms dating after the Civil War and after the adoption of the Fourteenth Amendment in 1868 may be confirmatory of earlier legislation but cannot be used alone to provide the appropriate historical analogue required by *Bruen*.   Legislation, history and events following the Civil war can confirm but cannot limit, reduce or infringe upon the rights as understood in 1791.   In other words, only those

restrictions with roots at the time of the Founding are sufficiently "enduring" and "well-established" to comport with the Second Amendment's "unqualified command." *Id.* at 2126 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961));

23.  Second, the historical analogue must be "representative." Historical "outlier" requirements of a few jurisdictions or of the Territories are to be disregarded.  *Bruen*, 142 S.Ct. at 2133, 2153, 2147 n.22 & 2156.  Courts should not "uphold every modern law that remotely resembles a historical analogue," because doing so "risk[s] endorsing outliers that our ancestors would never have accepted." *Drummond v. Robinson,* 9 f.4th 217 (3rd. Cir 2021),- individual self-defense is the central component of the Second Amendment right;

24.  Third, the historical analogue must be "relevantly similar," which is to say that it must burden ordinary, law-abiding citizens right to carry in a similar manner and for similar reasons. *Bruen*, 142 S. Ct. at 2132.  *Bruen* thus held that the inquiry into whether a proper analogue exists is controlled by two "metrics" of "how and why" any restriction was historically imposed during the Founding era.  *Id.* at 2133. "[W]hether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are "'*central*'"

considerations when engaging in an analogical inquiry." *Id.* (emphasis in original). "[T]o the extent later history contradicts what the text says, the text controls." *Id.* at 2137. "Thus, 'postratification adoption or acceptance of laws that are inconsistent with the original meaning of the constitutional text obviously cannot overcome or alter that text.'" *Id.*, quoting *Heller v. District of Columbia*, 670 F.3d , 670 F.3d 1224, 1274, n.6 (Kavanaugh, J., dissenting);

25.  Fourth, the historical analysis required by the Supreme Court is fundamentally a legal inquiry that examines legal history, which is appropriately presented in briefs. *See Bruen*, 142 S. Ct. at 2130 n.6 (noting that the historical inquiry presents "legal questions" that judges can address) (emphasis in original); *see* also id. at 2135 n.8 (rejecting the dissent's suggestion that further fact-finding was needed and holding that its ruling did not "depend on any of the factual issues raised by the dissent"). Accordingly, the required analysis does not require fact-finding by a court;

26.  The text of the Second Amendment, as authoritatively interpreted by the Supreme Court, indisputably covers possession (keep) and the wear, carry, and transport (bear) of firearms, including handguns by ordinary, law-abiding citizens.  The Government bears the burden to demonstrate that there is an enduring, well-established, representative historical analogue to

the restriction imposed by the government. And the historical analogue must be "relevantly similar" to the contemporary restriction imposed by the government, burdening the Second Amendment right in a similar manner and for similar reasons. Under this test established in *Bruen*, County cannot meet its burden to justify its denial in the issuance of CCW permits under the circumstances outlined in this complaint.  There is no historical analogue of <u>any</u> delay in the issuance of CCW[4];

## **STATEMENT OF LAW**

## **B**

### **Fourteenth Amendment**

---

[4] There is also no historical analogue allowing the government to infringe on being able to carry arms through a licensure or permitting process at all or with any delay.  It may be that certain specific persons are disallowed from possession or carriage of an arm, but that is vastly different than seeking permission to exercise a right at the present and in the future and to be forced to endure an invasive, onerous, expensive, subjective, discretionary, time-consuming process.  This current lawsuit does not attack the general concept of a licensure system for carrying concealed, or unconcealed, but notes that Hawaii and County have made it so that open carry is all but impossible for the average person, and subject to the Chief's discretion and carrying concealed requires an applicant to proceed through onerous requirements and discretionary issuance.  If one method of carry, unconcealed, has hurdles and some minimal governmental discretion, then the other manner, concealed, must be accomplished through merely ministerial application of objective measures such as ensuring that the applicant is not prohibited from possessing or carrying arms.  In Hawaii, to top it all off, the issuance of CCW is, at its base, subject to HPD discretion that allows the denial of a CCW based upon unconstitutional bases.

27. The Due Process clause states that "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law". *See* U.S. Const. amend. XIV, § 2;

28. To demonstrate a claim for procedural due process a litigant must fulfill the test laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). This test requires that we balance: "(1) the private interest at stake; (2) the risk of an erroneous deprivation of that interest through the procedures used and the probable value (if any) of alternative procedures; (3) the government's interest, including the possible burdens of alternative procedures." I*d.*

29. Plaintiff has a valid liberty interest in his constitutional right to carry a weapon concealed pursuant to *Bruen*[5];

30.  Plaintiff has a fundamental constitutional interest in the carry of his firearms;

---

[5] *Bruen* made clear that a state can choose to have minimal, objective requirements in order to carry in a particular mode, "shall issue", whether unconcealed or concealed, but cannot make one mode onerous and difficult to exercise and the other mode effectively denied.  Hawaii and County have made it so that open or unconcealed carry is extremely limited and is in no way a general right to carry and have erected numerous obstacles to concealed carry- the most facile of which is to just deny applications based on unconstitutional bases.

31. The County's policies have a great risk of erroneous deprivation because County relies on unreliable information to form a determination of _current_ unsuitability such as investigations into a crime and lapsed protection orders. And County does not alert Plaintiff that he would need to present additional evidence _beforehand_ to demonstrate he is suitable to carry a firearm[6];

32. The procedures used by County are woefully inadequate in light of the fact a constitutional right is at stake. County labeled Plaintiff unsuitable to exercise a constitutional right without an opportunity to appear and present evidence or any of the other hallmarks required "when the individual interests at stake in a state proceeding are both 'particularly important' and 'more substantial than mere loss of money.'" _Santosky v. Kramer_, 455 U.S. 745, 756 (1982) (holding that termination of parental rights must be supported by clear and convincing evidence rather than a "fair preponderance") (quoting _Addington v. Texas_, 441 U.S. 418, 424 (1979));

33. Moreover, the government has no interest in not providing an adversarial hearing or using alternative criteria for evaluating suitability. "Requiring the

---

[6] "Actually," as the D.C. Circuit has explained, "a collection of dismissed, abandoned or withdrawn arrest records are no more than gutter rumors when measured against any standards of constitutional fairness to an individual and, along with records resulting in an acquittal are not entitled to any legitimate law enforcement credibility whatsoever." _Utz v. Cullinane_, 520 F.2d 467, 479 (D.C. Cir. 1975) (quoting _United States v. Dooley_, 364 F. Supp. 75, 77 (E.D.Pa.1973).

Government to postpone seizure until after an adversary hearing creates no significant administrative burden." *U.S. v. James Daniel Good Real Prop*., 510 U.S. 43, 59 (1993). County Rules already mandate that an applicant be allowed an appeal. "From an administrative standpoint it makes little difference whether that hearing is held before or after the seizure." *Id.* Moreover, HPD could limit itself to relying on suitable convictions and other reliable criteria if it wished to minimize the need for a hearing. As it stands, any harm to HPD "is minimal in comparison to the injury occasioned by erroneous seizure." *Id.*

34. Thus, County has violated Plaintiff's Due Process rights;

35. Plaintiff alleges that the denial of a CCW based upon unconstitutional bases, as described herein, is unconstitutional and thus is a violation of due process as well as the Second and Fourteenth Amendment rights of Plaintiff;

## STATEMENT OF LAW

## C

### H.R.S. §134  Firearms

36. Hawaii law, specifically Hawaii Revised Statutes Section 134 *et seq*, is a comprehensive set of laws covering all aspects of firearms in Hawaii

including everything from acquisition, possession, ownership, usage and

carriage of arms[7];

37.  Prior to the United States Supreme Court decision in *Bruen*, Hawaii law,

specifically HRS §134-9, dealt with the carriage of weapons, and it read-,

**"§134-9  Licenses to carry.**  (a)  In an exceptional case, when an applicant shows reason to fear injury to the applicant's person or property, the chief of police of the appropriate county may grant a license to an applicant who is a citizen of the United States of the age of twenty-one years or more or to a duly accredited official representative of a foreign nation of the age of twenty-one years or more to carry a pistol or revolver and ammunition therefor concealed on the person within the county where the license is granted.  Where the urgency or the need has been sufficiently indicated, the respective chief of police may grant to an applicant of good moral character who is a citizen of the United States of the age of twenty-one years or more, is engaged in the protection of life and property, and is not prohibited under section 134-7 from the ownership or possession of a firearm, a license to carry a pistol or revolver and ammunition therefor unconcealed on the person within the county where the license is granted.  The chief of police of the appropriate county, or the chief's designated representative, shall perform an inquiry on an applicant by using the National Instant Criminal Background Check System, to include a check of the Immigration and Customs Enforcement databases where the applicant is not a citizen of the United States, before any determination to grant a license is made.  Unless renewed, the license shall expire one year from the date of issue.

---

[7] Hawaii state laws regarding all aspects of the Second Amendment and firearms are thorough, oppressive, and comprehensive.  Yet, Hawaii does not have an explicit preemption law that limits regulation to the state and in several circumstances allows or mandates that counties promulgate additional regulations, restrictions and processes.

(b)  The chief of police of each county shall adopt procedures to require that any person granted a license to carry a concealed weapon on the person shall:

(1)  Be qualified to use the firearm in a safe manner;

(2)  Appear to be a suitable person to be so licensed;

(3)  Not be prohibited under section 134-7 from the ownership or possession of a firearm; and

(4)  Not have been adjudged insane or not appear to be mentally deranged.

(c)  No person shall carry concealed or unconcealed on the person a pistol or revolver without being licensed to do so under this section or in compliance with sections 134-5(c) or 134-25.

(d)  A fee of $10 shall be charged for each license and shall be deposited in the treasury of the county in which the license is granted.";

38.  Following *Bruen*, the state of Hawaii promulgated new laws regarding firearms, making all aspects of the exercise of Second Amendment rights much more difficult, onerous and expensive.  One aspect of the laws passed by the state of Hawaii dealt with CCW and that law took effect on January 1, 2024.  The Plaintiff applied after *Bruen* and before January 1, 2024;

39.  Following *Bruen*, the state of Hawaii promulgated new rules regarding CCW.  Some of these new rules went into effect in June 2023 and others in January 2024.  The rules regarding the issuance of CCW went into effect on

January 1, 2024.  Those state statutes are available at

https://www.capitol.hawaii.gov/hrscurrent/, last accessed on July 25, 2024[8].

## STATEMENT OF LAW

## D

### County specific rules regarding CCW

40.  Prior to *Bruen*, based upon information and belief, the counties only

issued open carry permits for armored vehicle drivers and not to the general

public;

41.  Prior to *Bruen*, the counties had only issued less than a half-dozen carry

concealed permits in the prior decades;[9]

42.  Following *Bruen*, counties in Hawaii promulgated new rules.  County[10]

promulgated rules twice.  Those rules are attached as Exhibits 1 and 2;

---

[8] Kahalewai applied for his CCW in May 2023 and those statutes apply as do the current 2024 HRS current as of January 2024.

[9] *See e.g. Young v. Hawaii*, 896 F.3d 1044, 1071 n.21 (9th Cir. 2018) ("Hawaii counties appear to have issued only *four* concealed carry licenses in the past *eighteen years. See* 2000 Haw. Att'y Gen. Reps., *Firearm Registrations in Hawaii, 2000 et seq*;"). *Young* was vacated and reversed by the U.S. Supreme Court following the *Bruen* decision.

[10] Different counties promulgated different rules at different times.  County promulgated rules in or about November 2022. County promulgated additional rules in or about January 2024.  Plaintiff applied for a CCW under these rules.

43.  County's Honolulu Police Department Rules of the Chief of Police specific rules that are particularly relevant to this lawsuit[11] include-

§21-15-15(c) 3 (F);

§21-15-19 (a), (f)(1), (4), (5), (6);

§21-15-25(a), (b), (d), (g)[12].

**V**

## CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF UNITED STATES CONSTITUTION AMENDMENTS II AND XIV RIGHT TO BEAR ARMS 42 U.S.C. §1983

44.  Plaintiff hereby re-alleges and incorporates by reference the allegations in the forgoing paragraphs as if set forth fully herein;

45.  Plaintiff does not concede that any Hawaii Revised Statute or County code or policy, practice, habit, custom, or rule is constitutional;

46.  Plaintiff alleges that County's denial of CCW applications has violated his Second and Fourteenth Amendment U.S. Constitutional rights;

---

[11] If County relies on rules prior to January 2024 for its denial because Kahalewai applied in May 2023, those rules are complained of as well and are contained in the attached exhibits.  Plaintiff submits that because Kahalewai was denied in 2024, the 2024 rules apply.  Plaintiff challenges these rules.
[12] The rules attacked specifically in the complaint, are the 2024 rules and if applicable the prior rules. Both the 2024 and prior rules are in the exhibits.

47.  Following the *Bruen* decision, Hawaii, and County, erected onerous laws, customs, policies and practices that are designed to delay, deprive and infringe upon the exercise of Second Amendment rights for as long as possible;

48.  In *Cooper v. Aaron,* 358 U.S. 1 (1958), the Supreme Court was confronted with similar bureaucratic foot dragging in implementing public school integration. Given the open defiance of the Supreme Court's opinion in *Brown I*[13] and *Brown II,*[14] the Court did not tolerate finger-pointing, simply observing that "delay in any guise in order to deny . . . constitutional rights . . . could not be countenanced, and that only a prompt start, diligently and earnestly pursued . . . could constitute good faith compliance." 358 U.S. at 7.

49. There is no Hawaii Revised Statute, County ordinance or County custom, policy, rule, law or practice to issue CCW, the exercise of a fundamental constitutional right protected by the Second Amendment, without police discretion, in fact to the contrary, County's rules mention discretion[15] and discretion based decisions frequently and thus County has

---

[13] *Brown v. Board of Education*, 347 U.S. 483 (1954).
[14] *Brown v. Board of Education,* 349 U.S. 294 (1955).
[15] See Rules 21-15-15(c), (c)3, (f) and 21-15-19, and subsection (f).

unfettered discretion to deny CCW and or to deny on unconstitutional bases[16];

50.  County's unfettered discretion and its application of that unfettered discretion violates both the Second Amendment and the Due Process Clause;

51.  Plaintiff does not concede that any discretion in the issuance of a CCW license is permissible[17].  In fact, to the extent that any sort of CCW is required[18], it is possible to issue CCW licenses without any discretion.  For example, in Georgia, there is no training requirement.  Several other states are "constitutional carry" which means there is no permit required to carry concealed, such as in Vermont.

---

[16] And although County's rules ostensibly state that the burden to disapprove an application falls upon the Chief, *see* Rule §21-15-15(c)3(F), §21-15-19(f)(6), if County merely exercises discretion and or utilizes unconstitutional bases, the applications are then denied, which is what County wants.  Thus, the applicant starts off without a CCW and remains that way and County can just deny CCW applications using County agent discretion and or also citing unconstitutional bases to deprive and infringe upon applicants' applications.  County's appeal process, see Rule §21-15-28, does not save County.  It is improper burden shifting to force an applicant to appeal County's use of discretion and or use of unconstitutional bases to deny the CCW.  There is no objective reason to deny Plaintiff his CCW application.

[17] Plaintiff alleges that if unconcealed carry licenses are subject to governmental hurdles and discretion and licensure, then concealed carry cannot be.  Hawaii can choose to allow one mode of carry to have some level of governmental hurdles and discretion and the other to not have those hurdles, but they cannot make both modes of carry onerous, expensive, discretionary, and here, complete with denials based on unconstitutional bases.

[18] Arizona is but one of 27 states that is "constitutional carry" or carry without a permit or license.  In Arizona you can carry openly or concealed without a permit.

**Plaintiff Corey Kahalewai**

52.  Plaintiff Corey Kahalewai realleges and incorporates by reference all of the foregoing allegations of this complaint;

53.  Plaintiff Corey Kahalewai, hereinafter "Kahalewai", challenges County's custom, policy, rule, or practice of denial of CCW based upon a prior investigation of him;

54.  Plaintiff Kahalewai challenges County's custom, policy, rule, or practice of denial of CCW based upon a prior criminal investigation of him;

55.  Plaintiff Kahalewai challenges County's custom, policy, rule, or practice of denial of CCW based upon a prior criminal investigation of him that has not resulted in a complaint, charge, information, indictment, or conviction;

56.  Plaintiff Kahalewai challenges County's custom, policy, rule or practice of denial of CCW based upon a restraining order that is no longer in effect or has lapsed;

57.  Plaintiff Kahalewai challenges County's custom, policy, rule or practice of denial of CCW based upon more than one restraining order that is no longer in effect or had lapsed;

58. Plaintiff Kahalewai challenges County's custom, policy, rule or practice of denial of CCW based upon an investigation of him, as described herein, and or lapsed restraining orders, as described herein, and or the use of discretion;

59. Plaintiff Kahalewai challenges County's custom, policy, rule or practice of denial of CCW based upon County's agent's use of discretion;

60. Plaintiff Kahalewai challenges County's custom, policy, rule or practice of unfettered and arbitrary discretion in the issuance of his CCW license;

61. Plaintiff Kahalewai challenges Rules of the Honolulu Chief of Police Title 21 Chapter 15 as being unconstitutional both facially and as applied to him .

62. Plaintiff Kahalewai is a U.S. citizen, a male, and a resident of Honolulu County;

63. Plaintiff Kahalewai legally owns firearms in Hawaii;

64. Plaintiff Kahalewai is not disqualified under Hawaii or federal law from owning, possessing or carrying a firearm, including in a concealed manner;

65.  Plaintiff Kahalewai has completed all requirements under Hawaii law and County regulation to be issued a CCW license;

66.  Plaintiff Kahalewai applied for a CCW by submitting all necessary paperwork to County on or about May 2023;

67.  Plaintiff Kahalewai received a denial letter on or about March 20, 2024, see Exhibit 3;

68.     Plaintiff Kahalewai was in contact with County in or about the month of September 2023 and was informed that a portion of his CCW application had been misplaced or lost.  Plaintiff Kahalewai replaced the missing documentation at County's request and submitted a second CCW application in or around September 2023.  Plaintiff Kahalewai was emailed on or about October 6, 2023 and was informed that his application was being processed;

69.  County informed Kahalewai that his CCW was denied based upon

"Upon a comprehensive criminal history check. it has been revealed that you were a suspect in a Sexual Assault in the First Degree case in 2016. Additionally, from 2016 to 2019, you were the respondent to an injunction against harassment issued by a judge of the State of Hawaii for the same woman you are suspected of sexually assaulting. From 2019 to 2020, you were a respondent to an order for protection issued for a different individual who was your intimate partner at the time. The totality of the circumstances, including your history of alleged domestic violence and involvement in crimes of violence within the ten years preceding the applications as well as the issuance of two court orders for protection within this timeframe, were considered in light of HRS Sections 134-9(a)(3) and (h)(2) and (3) and Rules

of the Chief of Police, Sections 21-15-19(f)(1), (4), and (5) and 21-15-25(b).";

70.  Based upon information and belief there is no arrest warrant or penal summons for Kahalewai;

71.  Based upon information and belief, there is no criminal charge pending against Kahalewai[19];

72.  Based upon information and belief, Kahalewai has never been charged with a crime based upon any investigation that served as the basis for the denial of his CCW;

73.  Based upon information and belief, Kahalewai has never been arrested for any crime that was investigated as part of the investigation that served as the basis to deny his CCW;

74.  Based upon information and belief Plaintiff Kahalewai has never been found guilty of violating a Temporary Restraining order nor any other disqualifying crime[20];

---

[19] ECourtKokua, located on https://www.courts.state.hi.us/, shows some arrest warrants and penal summons and criminal charges.  But, criminal charges and warrants can be sealed by the prosecutor and or court and not unsealed until a defendant has been arrested and then unsealed at arraignment, thus a person may not necessarily find every warrant and or charge against him in the public domain.
[20] Or any other judicial order however characterized whether an injunction against harassment or a restraining order or a temporary restraining order.  In the lapsed orders of protection, based upon information and belief, there were no judicial findings made- *See* Exhibit 4.

# VI

## CLAIM FOR DECLARATIVE AND INJUNCTIVE RELIEF UNITED STATES CONSTITUTION AMEND XIV PROCEDURAL DUE PROCESS

75.  Plaintiff repeats and realleges the allegations of the preceding paragraphs as if set forth herein;

76.  The Due Process clause states that "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law". *See* U.S. Const. amend. XIV, § 2;

77. To demonstrate a claim for procedural due process a litigant must fulfill the test laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). This test requires that we balance: "(1) the private interest at stake; (2) the risk of an erroneous deprivation of that interest through the procedures used and the probable value (if any) of alternative procedures; (3) the government's interest, including the possible burdens of alternative procedures." I*d.*

78. Plaintiff has a valid liberty interest in his constitutional right to carry a weapon concealed pursuant to *Bruen*[21];

---

[21] *Bruen* made clear that a state can choose to have minimal, objective requirements in order to carry in a particular mode, "shall issue", whether unconcealed or concealed, but cannot make one mode onerous and difficult to

79.   Plaintiff has a fundamental constitutional interest in the carry of his firearms;

80. The County's policies have a great risk of erroneous deprivation because County relies on unreliable information to form a determination of *current* unsuitability such as investigations into a crime and lapsed protection orders. And County does not alert Plaintiff that he needs to present evidence *beforehand* to demonstrate he is suitable to carry a firearm[22];

81. The procedures used by County are woefully inadequate in light of the fact a constitutional right is at stake. County labeled Plaintiff unsuitable to exercise a constitutional right without an opportunity to appear and present evidence or any of the other hallmarks required "when the individual interests at stake in a state proceeding are both 'particularly important' and 'more substantial than mere loss of money.'" *Santosky v. Kramer*, 455 U.S. 745, 756 (1982) (holding that termination of parental rights must be supported by clear and

---

exercise and the other mode effectively denied.  Hawaii and County have made it so that open or unconcealed carry is extremely limited and is in no way a general right to carry and have erected numerous obstacles to concealed carry- the most facile of which is to just deny applications based on unconstitutional bases.
[22] "Actually," as the D.C. Circuit has explained, "a collection of dismissed, abandoned or withdrawn arrest records are no more than gutter rumors when measured against any standards of constitutional fairness to an individual and, along with records resulting in an acquittal are not entitled to any legitimate law enforcement credibility whatsoever." *Utz v. Cullinane*, 520 F.2d 467, 479 (D.C. Cir. 1975) (quoting *United States v. Dooley*, 364 F. Supp. 75, 77 (E.D.Pa.1973).

convincing evidence rather than a "fair preponderance") (quoting *Addington v. Texas*, 441 U.S. 418, 424 (1979));

82. Moreover, the government has no interest in not providing a hearing or using alternative criteria for evaluating suitability. "Requiring the Government to postpone seizure until after an adversary hearing creates no significant administrative burden." *U.S. v. James Daniel Good Real Prop.*, 510 U.S. 43, 59 (1993). County Rules already mandate that an applicant be allowed an appeal. "From an administrative standpoint it makes little difference whether that hearing is held before or after the seizure." *Id.* Moreover, HPD could limit itself to relying on qualifying convictions and other reliable criteria if it wished to minimize the need for a hearing. As it stands, any harm to HPD "is minimal in comparison to the injury occasioned by erroneous seizure." *Id.*

## VII

## CLAIM FOR DECLARATIVE AND INJUNCTIVE RELIEF UNITED STATES CONSTITUTION AMEND. XIV SUBSTANTIVE DUE PROCESS

83. Plaintiff repeats and realleges the allegations of the preceding paragraphs as if set forth herein;

84. When a Defendant, such as County, acts arbitrarily and/or unreasonably it violates substantive due process;

85.   County, by denying the exercise of a fundamental constitutional right, to wit, the Second Amendment right to bear arms, through the issuance of a CCW, has acted arbitrarily and unreasonably;

86.   County, by denying the exercise of a fundamental constitutional right, to wit, the Second Amendment right to bear arms, through the issuance of a CCW, has acted in an arbitrary and or unreasonable manner;

87.   When government, such as County, has acted in an arbitrary, unreasonable manner and by denying CCW through the use of discretion and or based on unconstitutional bases and denying the exercise of a fundamental constitutional right, it has violated Plaintiff's substantive due process rights. "[T]he Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Foucha v. Louisiana,* 504 U.S. 71, 78 (1992).   County's conduct is arbitrary because the discretion it gives officials to determine suitability is inherently arbitrary;

88.   Plaintiff has a liberty interest and a fundamental right interest in exercising his Second Amendment rights to bear arms, including in a concealed manner, with or without a CCW;

89.  For purposes of all Counts and Claims the Defendant has acted under "color of state law" within the meaning of Section 1983.

90.  Plaintiff has a right to substantive due process which means that his permit to carry application cannot be denied in an arbitrary or unreasonable manner.

91.  For the reasons laid out above, HPD's rules violate Plaintiff's Due Process rights.

## VIII

## (DECLARATORY JUDGMENT)

92.   Plaintiff repeats and realleges the allegations of the preceding paragraphs as if set forth herein;

93.   The Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction, any court of the United States may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. 2201(a);

94.   Absent a declaratory judgment, there is a substantial likelihood that Plaintiff will suffer irreparable injury in the future;

95.   There is an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment;

96.   This Court possesses an independent basis for jurisdiction over the parties;

97.     Plaintiff seeks a judgment declaring that Defendant's customs, policies, rules and or practices, to wit, denial of CCW based on discretion and or unconstitutional bases as described herein, which deny Plaintiff his Second Amendment rights to carry arms in case of confrontation with a CCW, are unconstitutional under the Second Amendment;

98.     Alternatively, a declaration that County's customs, policies, rules and or practices are unconstitutional as applied to Plaintiff;

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that judgment be entered in his favor and against Defendant as follows:

1.   An order preliminarily and permanently enjoining Defendant, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing Defendant's policies, rules, customs, or practices complained about above;

2.   An order preliminarily and permanently enjoining Defendant, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction,

from enforcing the Rules of the Honolulu Chief of Police Chapter 15
Title 23 both facially and as applied to Plaintiff;

3.   Declaratory relief that the complained of County customs, policies,
rules and or practices are unconstitutional;

4.   Declaratory relief that the Rules of the Honolulu Chief of Police
Chapter 15 Title 23 are unconstitutional both facially and as applied to
Plaintiff.

5.   An order compelling County to grant Plaintiff's CCW application
immediately and for that application that has been denied, grant it
without any further action by applicant;

6.   An order compelling County to process all applications in the future
without denying CCW applications on unconstitutional bases, including
those described herein, and or based upon discretion;

7.   Awarding Plaintiff's attorney fees and costs pursuant to 42 U.S.C.
§1988;

8.   Nominal Damages.

9.   Compensatory Damages

10.  Such other relief consistent with the injunction as appropriate; and

11.  Such other further relief as the Court deems just and appropriate.

Dated: July 31, 2024.

Respectfully submitted,


/s/ *Kevin O'Grady*

Kevin Gerard O'Grady

Law Office of Kevin O'Grady, LLC
1164 Bishop Street, Suite 1605
Honolulu, Hawaii 96813
(808) 521-3367
Hawaii Bar No. 8817
Kevin@KevinOGradyLaw.Com


/s/ *Alan Beck*

Alan Alexander Beck

Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA  92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com
Counsel for Plaintiffs

# VERIFICATION

I, Corey Kahalewai, declare as follows:

1. I am a Plaintiff in the present case and a citizen of the United States of America.

2 . I have personal knowledge of myself, my activities, and my intentions , including those set out in the forgoing *Verified Complaint for Declaratory and Injunctive Relief*, and if called on to testify, I would competently testify as to the matters stated herein.

3. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *Verified Complaint for Declaratory and Injunctive Relief* concerning myself, my activities and my intentions are true and correct.

Executed on July 26, 2024

COREY KAHALEWAI