DANA M.O. VIOLA                          6095
Corporation Counsel

DANIEL M. GLUCK                          7959
JACQUELINE DE LEEUW HUANG 11644
PATRICIA SENDÃO                          11708
Deputies Corporation Counsel
City and County of Honolulu
530 South King Street, Room 110
Honolulu, Hawaiʻi  96813
Telephone: (808) 768-5233 / (808) 768-5248 / (808) 768-5121
Facsimile:  (808) 768-5105
E-Mail:      daniel.gluck@honolulu.gov
                  j.deleeuwhuang@honolulu.gov
                  patricia.sendao@honolulu.gov

Attorneys for Defendant
CITY AND COUNTY OF HONOLULU

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| COREY KAHALEWAI,<br><br>          Plaintiff,<br><br>     v.<br><br>CITY AND COUNTY OF HONOLULU,<br><br>          Defendant. | CIVIL NO. 24-00323 JAO-RT<br><br>DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION [ECF NO. 2]; CERTIFICATE OF WORD COUNT; DECLARATION OF CARLENE LAU; DECLARATION OF DANIEL M. GLUCK; EXHIBITS 1-2 AND 7-8<br><br><u>Hearing</u><br>Date:  Thursday, September 5, 2024<br>Time:  9:00 a.m.<br>Judge: Hon. Jill A. Otake<br><br>No trial date set. |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................1

II.     BACKGROUND ........................................................................................2

   A.   Kahalewai's earlier lawsuit (*Nelson v. Honolulu City & County*)..................2

   B.   Stipulation and release in earlier lawsuit ........................................5

   C.   Challenge to HPD's Rules in both lawsuits ........................................6

   D.   HPD's March 20, 2024 letter ........................................................7

   E.   Restraining Orders (2016-2019 and 2019-2020)........................................8

III.    STANDARD OF REVIEW........................................................................10

IV.     DISCUSSION ........................................................................................11

   A.   Kahalewai already released these claims. ........................................11

   B.   Even if this Court addresses Kahalewai's substantive claims, he has failed to
        carry his burden to obtain injunctive relief........................................14

        1.   Kahalewai is not likely to succeed on the merits. ...................................14

             a.   Kahalewai's Second Amendment claim fails.....................................14

             b.   Plaintiff's due process claim is baseless. ............................................21

             c.   *Monell* bars claims for any undefined "custom."................................23

        2.   Kahalewai will not suffer irreparable harm..............................................24

        3.   The public interest and balance of equities weigh in the City's favor. ....25

   C.   Consolidation pursuant to Rule 65(a)(2) is not warranted. ...........................26

V.      CONCLUSION........................................................................................27

VI.     CERTIFICATE OF WORD COUNT............................................................28

# TABLE OF AUTHORITIES

## Cases

*Abbott Labs. v. Alpha Therapeutic Corp.*, 164 F.3d 385 (7th Cir. 1999) ................ 12

*All. For The Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) ..................... 25

*Am. Freedom Def. Initiative v. King County*, 796 F.3d 1165 (9th Cir. 2015) ......... 10

*Botefur v. City of Eagle Point*, 7 F.3d 152 (9th Cir. 1993) ...................................... 11

*Cal. State Auto. Ass'n Inter-Ins. Bureau v. Superior Court*, 50 Cal. 3d 658,
   268 Cal. Rptr. 284, 788 P.2d 1156 (1990) ............................................................ 11

*Carmichael v. Ige*, 470 F. Supp. 3d 1133 (D. Haw. 2020) ................................ 10, 11

*District of Columbia v. Heller,* 554 U.S. 570 (2008) ............................................... 25

*Envtl. Prot. Info. Ctr. v. Carlson*, 968 F.3d 985 (9th Cir. 2020) ............................. 26

*Hawaiian Ass'n of Seventh-Day Adventists v. Wong*, 130 Hawai'i 36,
   305 P.3d 452 (2013) ............................................................................................... 11

*Inamed Corp. v. Kuzmak*, 275 F. Supp. 2d 1100 (C.D. Cal. 2002) ......................... 12

*Jeff D. v. Andrus*, 899 F.2d 753 (9th Cir. 1989) ...................................................... 11

*L.A. Cty. v. Humphries,* 562 U.S. 29 (2010) ............................................................ 24

*Local No. 93, Int'l Asso. of Firefighters, etc. v. Cleveland*, 478 U.S. 501 (1986) ... 12

*Morrissey v. Brewer*, 408 U.S. 471 (1972) .............................................................. 23

*Nelson et al. v. Honolulu City and County*, Civ. No. 1:24-CV-00100 MWJS-RT
   (D. Haw. 2024) ...................................................................................................... 2, 5

*Porretti v. Dzurenda*, 11 F.4th 1037 (9th Cir. 2021) .............................................. 26

*Shinault v. Hawks*, 776 F.3d 1027 (9th Cir. 2015) ....................................................21

*United States v. ITT Cont'l Baking Co.*, 420 U.S. 223 (1975)..................................11

*United States v. Perez-Garcia*, 96 F.4th 1166 (9th Cir. 2024) ......................... 18, 19

*United States v. Rahimi*, 144 S. Ct. 1889 (2024) ..................... 17, 18, 19, 20, 22, 25

*Uyeda v. Schermer*, 144 Hawai'i 163, 439 P.3d 115 (2019)....................................9

*Winter v. NRDC, Inc.*, 555 U.S. 7 (2008)................................................................10

*Wong v. Cayetano*, 111 Hawai'i 462, 143 P.3d 1 (2006)................................. 12, 13

*Yamada v. Snipes*, 604 Fed. App'x 579 (9th Cir. 2015) ..........................................27

**Statutes**

18 U.S.C. § 922(g)(8)........................................................................................ 19, 20

HRS § 586-5.5..................................................................................................... 9, 17

HRS § 604-10.5................................................................................................... 9, 17

**Rules**

Fed. R. Civ. P. 65(a)(2)..............................................................................................26

Rules of the Chief of Police (2022), § 15-28 ...........................................................21

Rules of the Chief of Police (2024), § 21-15-15......................................................20

Rules of the Chief of Police (2024), § 21-15-19............................................. 8, 16, 20

Rules of the Chief of Police (2024), § 21-15-28......................................................21

**Other Authorities**

BWJP, "Research at the Intersection of Intimate Partner Violence and Firearms"
    (2024)...................................................................................................................19

## <u>MEMORANDUM IN OPPOSITION TO MOTION FOR<br>PRELIMINARY INJUNCTION</u>

## I.    INTRODUCTION

Plaintiff Corey Kahalewai already sued the City and County of Honolulu

(City) on the same set of facts alleged here.  He already released all claims that

were brought, or could have been brought, in that earlier case.  In the current

lawsuit, Kahalewai challenges the denial of his application for a License to Carry a

concealed firearm in public (License), and he alleges that the Rules of the

Honolulu Chief of Police are unconstitutional both facially and as applied.  He

already brought – and released – these claims in an earlier lawsuit.  This Court can

(and should) end its analysis there:  Kahalewai cannot win on the merits of his

claims, and his motion for a preliminary injunction should be denied.[1]

Even if this Court were to consider Kahalewai's claims, however, he is still

unlikely to win on the merits.  Kahalewai was subject to restraining orders – issued

by two different Hawai'i state judges – for approximately four of the seven years

preceding his License application.  Specifically, "from 2016 to 2019, [he was] the

respondent to an injunction against harassment issued by the State of Hawaii for

the same woman [he is] suspected of sexually assaulting [in 2016]."  ECF 1-3 (Ex.

---

[1] The City intends to file a motion for summary judgment – containing the same arguments regarding Kahalewai's previous release of his claims – the day after filing this Memorandum.

3 to Plaintiff's Complaint).  Further, "[f]rom 2019 to 2020, [he was] a respondent to an order of protection issued for a different individual who was [his] intimate partner at the time."  *Id.*  In that case, the presiding judge found that "a protective order is necessary to prevent domestic abuse or a recurrence of abuse."  Gluck Decl., Ex. 8.

In the face of these restraining orders, Kahalewai asked the Honolulu Police Department (HPD) for a License to carry a firearm in public.  HPD rightly said "no."  HPD carried out its necessary – and constitutional – mission of protecting the public from persons who lack the temperament necessary to carry concealed, deadly weapons in public.

The Supreme Court has been clear that the Second Amendment right is not limitless.  Kahalewai is precisely the type of person whose License application can and should be denied.  Neither the facts nor the law supports his arguments.

## II.    BACKGROUND

### A.    Kahalewai's earlier lawsuit (*Nelson v. Honolulu City & County*)

On March 1, 2024, Kahalewai – along with two individuals and an organization – sued the City in this Court.  *Nelson et al. v. Honolulu City and County*, Civ. No. 1:24-CV-00100 MWJS-RT (D. Haw. 2024) (ECF No. 1) (hereinafter, *Nelson* Complaint, attached as Gluck Decl., Ex. 1).  The allegations and the operative facts in the *Nelson* case and this case are nearly identical.  Below

are some of the allegations in the *Nelson* Complaint and this case (hereinafter,

*Kahalewai* Complaint, ECF 1):

| *Nelson* Complaint (at PDF 61) | *Kahalewai* Complaint (at PDF 26) |
|---|---|
| 70.    Plaintiff Kahalewai applied for a CCW in or about the month of May 2023 and submitted all necessary documentation; | 66.    Plaintiff Kahalewai applied for a CCW by submitting all necessary paperwork to County on or about May 2023; |
| 71.    Plaintiff Kahalewai was in contact with County in or about the month of September 2023 and was informed that a portion of his CCW application had been misplaced or lost. Plaintiff Kahalewai replaced the missing documentation at County's request and submitted a second CCW application in or around September 2023.  Plaintiff Kahalewai was emailed on or about October 6, 2023 and was informed that his application was being processed. | 67.    Plaintiff Kahalewai received a denial letter on or about March 20, 2024 . . . ; |
| | 68.    Plaintiff Kahalewai was in contact with County in or about the month of September 2023 and was informed that a portion of his CCW application had been misplaced or lost. Plaintiff Kahalewai replaced the missing documentation at County's request and submitted a second CCW application in or around September 2023.  Plaintiff Kahalewai was emailed on or about October 6, 2023 and was informed that his application was being processed[.] |
| 72.    Plaintiff Kahalewai has not received an approval or a denial or any written communication from County regarding his CCW application since October 2023[.] | |

Similarly:

| *Nelson* Complaint (at PDF 2 ¶2) | *Kahalewai* Complaint (at PDF 2, ¶1) |
|---|---|
| But for the actions challenged in this lawsuit, he would have a (CCW)[.] | But for the actions challenged in this lawsuit, he would have a carry concealed permit, hereinafter 'CCW[.]' |

3

Similarly:

| *Nelson* Complaint (at PDF 60) | *Kahalewai* Complaint (at PDF 25) |
|---|---|
| 64.    Plaintiff Kahalewai challenges County's custom, policy, rule, or practice of unfettered and arbitrary discretion in the issuance of his CCW license[.] | 60.    Plaintiff Kahalewai challenges County's custom, policy, rule or practice of unfettered and arbitrary discretion in the issuance of his CCW license[.] |

At the time Kahalewai filed the Complaint in *Nelson* in March 2024, he alleged that his License application had been pending since 2023 and that the City was unlawfully prohibiting him from carrying a firearm in public. *Nelson* Complaint, PDF 61. Kahalewai makes the same claims here:

| *Nelson* Complaint (at PDF 5-6 ¶10) | *Kahalewai* Complaint (at PDF 5 ¶7) |
|---|---|
| Defendants [sic] have flat-out denied Plaintiffs their rights to be armed outside of their homes by establishing an onerous permitting regime replete with subjective and discretionary decisions, poll tax-like fees, and as applicable to this lawsuit, egregious wait times designed to flout the Supreme Court's precedents. | Defendant has flat-out denied Plaintiff his right to be armed outside of his home by establishing an onerous permitting regime replete with subjective and discretionary decisions, poll tax-like fees, and as applicable to this lawsuit, discretionary decisions that rely on unconstitutional reasons to deny applicants their CCW permits and designed to flout the Supreme Court's precedents. |

**B.**     **Stipulation and release in earlier lawsuit**

Kahalewai and the other plaintiffs in *Nelson* settled their case with the City; in so doing, on May 10, 2024, this Court (the Hon. Micah Smith presiding) approved and ordered a stipulation and stipulated judgment with this release:

> With the exception of Plaintiffs' claim for attorneys' fees and/or costs, Plaintiffs unconditionally release, acquit, and discharge the City and County of Honolulu and all its employees and agents from all injuries, claims, damages, and causes of action ***that were brought or could have been brought arising from or associated with the facts alleged in the instant Lawsuit and the laws, rules, or regulations in effect at the time of the execution of this Stipulated Judgment***. No other claims, other than for attorneys' fees and costs, remain outstanding in this litigation.

Stipulation and Stipulated Permanent Injunction in *Nelson* (ECF No. 25) PDF 9-10 (hereinafter, *Nelson* Stipulation; attached as Gluck Decl. Ex. 2).  In other words, in the first lawsuit, Kahalewai sued the City because the City had not issued him a License after he submitted application materials in May and September 2023. *Nelson* Complaint, PDF 2, 5-6, 60-61.  In the current lawsuit, Kahalewai is suing the City because the City had not issued him a License after he submitted application materials in May and September 2023.  *Kahalewai* Complaint, PDF 2, 26.  In both cases he attacks the HPD's allegedly unconstitutional use of discretion in analyzing his May and September applications.  *See, e.g.*, *Nelson* Complaint, PDF 5, 57, 60; *Kahalewai* Complaint, PDF 3, 5, 6, 33.

### C.     Challenge to HPD's Rules in both lawsuits

Kahalewai's current Complaint alleges that the City's administrative rules are unconstitutional, both facially and as applied to him.  *Kahalewai* Complaint, PDF 25 ¶61.  He brought the same claims in the *Nelson* case.  *See Nelson* Complaint, PDF 68-69 ¶108-109 (seeking a declaratory judgment that the City's "customs, policies, *rules* and or practices . . . are unconstitutional under the Second Amendment" or, alternatively, a declaration that the City's "customs, policies, *rules* and or practices are unconstitutional as applied to each Plaintiff" (emphases added)).  Again, Kahalewai released these claims:  the City's administrative rules – those effective November 2022, and the amended rules effective January 2024 – were in existence at the time of the Stipulated Judgment (May 10, 2024).  *See Nelson* Stip. at 9 (releasing all claims "that were brought or could have been brought arising from or associated with the facts alleged in the instant Lawsuit *and the laws, rules, or regulations in effect at the time of the execution of this Stipulated Judgment*" (emphasis added)); *see also* ECF 1-1 (2022 Rules); ECF 1-2 (2024 Rules); ECF 1-3, PDF 2 (3/20/24 letter referencing administrative rules).  Less than two months later, Kahalewai released all claims "arising from or associated with . . . the laws, rules, or regulations in effect *at the time of the execution of this Stipulated Judgment*."  *Nelson* Stip., PDF 9 (emphasis added).

6

### D.     HPD's March 20, 2024 letter

On March 20, 2024 – after the *Nelson* Complaint (March 1) but before the

*Nelson* Stipulation (May 10) – HPD issued a letter to Kahalewai, notifying

Kahalewai that his License application had been denied.  ECF 1-3 PDF 2.

Kahalewai apparently believes this letter gives rise to a new lawsuit, but the new

lawsuit makes the exact same claim as the old lawsuit:  that the City violated

Kahalewai's rights by preventing him from carrying a firearm outside his home.

*Nelson* Complaint, PDF 5-6 ¶10; *Kahalewai* Complaint, PDF 5 ¶7.

Even if it were not crystal clear that Kahalewai actually brought the same

claims in both cases, the delay and the denial arose from the same facts:

> [B]oth the alleged delay in processing the License
> application and the denial of the License application were
> based on the same thing: the background check.
> Kahalewai would have been authorized to carry a firearm
> in public no later than December 31, 2023 but for the
> background check.

Declaration of Carlene Lau (Lau Decl.) ¶14.  *See also id.* at ¶8 ("[I]n 2023 we had

decided to recommend that Kahalewai's application be denied . . . based on the

background items listed above and the then-effective Rules[.]").  Kahalewai's

application would have been granted – long before the *Nelson* Complaint was filed

– but for information obtained in a June 2023 background check.[2]  Lau Decl., ¶12

---

[2] This information was made public by Kahalewai in ECF 1-3 at PDF 2.

("But for the background items, Kahalewai's License application would have been approved.  That approval likely would have occurred by December 31, 2023."), *id.* ¶6 ("On June 8, 2023, Records ran a background check on Kahalewai.  That background check revealed the information that Kahalewai made public in his court filings, in Docket #1-3 at page 2.").

HPD personnel made the determination that Kahalewai did not meet the Rules' requirements (both the 2024 rule, § 21-15-19(f), and its 2022 predecessor, § 15-23(1)).  Lau Decl. ¶¶7-9.  That determination was the reason for the delay at the heart of the *Nelson* case.  Lau Decl. ¶¶11-12.  Had Kahalewai not settled the *Nelson* case, but instead proceeded with discovery, he could have learned the reason *why* his application had been delayed; indeed, he *did* learn the reasons (via the March 20 letter) *prior* to settling *Nelson*.  *See id.*; ECF 1-3; *Kahalewai* Complaint, PDF 26 ¶67; *Nelson* Stip., PDF 10.  Kahalewai's challenge in this case "aris[es] from" and is "associated with" the facts alleged in *Nelson. Nelson* Stip. PDF 9.  He already released these claims.

### E.  Restraining Orders (2016-2019 and 2019-2020)

In the seven years preceding his application for a License, Kahalewai had two court-issued restraining orders issued against him.  Importantly, these were not just temporary orders that were issued *ex parte*:  in 2016, a Hawai'i state court judge issued a three-year injunction against harassment that barred Kahalewai from

8

contact with a woman whom he was suspected of sexually assaulting earlier that year.[3]  ECF 1-3; Gluck Decl., Ex. 7.  In 2019 – while the first injunction was still in place – a different state court judge issued a 16-month order of protection against Kahalewai, for a different woman (his intimate partner at the time).  ECF 1-3; Gluck Decl., Ex. 8.  The judge who issued the protective order in 2019 did not make findings of abuse, but the court records state that Kahalewai "was provided with all necessary notice and given a full and sufficient opportunity to be heard" and the court found that "*a protective order is necessary to prevent domestic abuse or a recurrence of abuse*."[4]  Gluck Decl., Ex. 8 (emphasis added; formatting altered).

Kahalewai applied for a License in 2023.  ECF 1-3.  Thus, for approximately four of the seven years preceding his application, Kahalewai was subject to a

---

[3] As the Hawaiʻi Supreme Court explained, HRS § 604-10.5 "authorizes the issuance of an injunction against harassment *only when harassment has been proven* by 'clear and convincing evidence[.]'" *Uyeda v. Schermer*, 144 Hawaiʻi 163, 175, 439 P.3d 115, 127 (2019) (emphasis added); *see also* HRS § 604-10.5(a) (defining "harassment"); ECF 1-3 (HPD letter stating that Kahalewai was "the respondent to an injunction against harassment issued by a judge . . . for the same woman you are suspected of sexually assaulting.").

[4] In general, an order of protection involves a family or household member (or romantic relationship), whereas an injunction against harassment does not.  *See also* HRS § 586-5.5 (authorizing the court to issue an order of protection if "the court finds that the respondent has failed to show cause why the order should not be continued and that a protective order is necessary to prevent domestic abuse or a recurrence of abuse").

court-issued restraining order (which prohibited him from possessing firearms except in connection with his military service).  ECF 1-3; Gluck Decl., Exs. 7, 8. Accordingly, HPD denied Kahalewai's application because he did not meet the requirements of HRS § 134-9 (the statute governing Licenses to Carry) or HPD's Rules.  ECF 1-3.

## III.   STANDARD OF REVIEW

Kahalewai contends that "[t]his Court should enter a preliminary injunction which orders County to issue Plaintiff a concealed carry license[.]"  ECF 2-1 at 31. Kahalewai seeks a *mandatory* injunction, which is "particularly disfavored":

> Plaintiffs seek to alter the status quo ante . . . .
> Accordingly, they seek a mandatory injunction.
> Mandatory injunctions are particularly disfavored.  In
> general, mandatory injunctions are not granted unless
> extreme or very serious damage will result and are not
> issued in doubtful cases[.]

*Am. Freedom Def. Initiative v. King Cnty.*, 796 F.3d 1165, 1173 (9th Cir. 2015) (cleaned up).  Plaintiff generally sets forth the correct standard for a prohibitory injunction.  *See* ECF 2-1 at PDF 9.  However, "[i]njunctive relief is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief'; it is 'never awarded as of right.'"  *Carmichael v. Ige*, 470 F. Supp. 3d 1133, 1140 (D. Haw. 2020) (quoting *Winter v. NRDC, Inc.*, 555 U.S. 7, 22, 24 (2008)).  Courts "should be particularly mindful, in exercising their sound discretion, of the 'public consequences in employing the extraordinary

remedy of injunction.'" *Carmichael*, 470 F. Supp. 3d at 1140 (quoting *Winter*, 555 U.S. at 24).

## IV.   DISCUSSION

### A.   Kahalewai already released these claims.

The Stipulated Judgment in *Nelson* is an enforceable settlement agreement. *See United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 238 (1975) ("[A] consent decree or order is to be construed for enforcement purposes basically as a contract[.]"); *Cal. State Auto. Ass'n Inter-Ins. Bureau v. Superior Court*, 50 Cal. 3d 658, 663, 268 Cal. Rptr. 284, 286, 788 P.2d 1156, 1158 (1990) ("In a stipulated judgment, or consent decree, litigants voluntarily terminate a lawsuit by assenting to specified terms, which the court agrees to enforce as a judgment."). Further, "enforceability of these compromise agreements is favored in the law." *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989).

"The interpretation of a settlement agreement is governed by principles of state contract law. This is so even where a federal cause of action is 'settled' or 'released.'" *Botefur v. City of Eagle Point*, 7 F.3d 152, 156 (9th Cir. 1993) (cleaned up). Hawaiʻi state contract law provides that "[c]ontract terms are interpreted according to their plain, ordinary, and accepted sense in common speech." *Hawaiian Ass'n of Seventh-Day Adventists v. Wong*, 130 Hawaiʻi 36, 45, 305 P.3d 452, 461 (2013). "[W]hen the terms of a contract are definite and

11

unambiguous there is no room for interpretation." *Wong v. Cayetano*, 111 Hawai'i 462, 481, 143 P.3d 1, 20 (2006) (cleaned up).

The *Nelson* Plaintiffs – including Kahalewai – voluntarily terminated their lawsuit by assenting to specified terms:  they assented to a release provision, which was a material term that the City obtained in exchange for consenting to its own obligations.  *See Abbott Lab'ys. v. Alpha Therapeutic Corp.*, 164 F.3d 385, 388 (7th Cir. 1999) (release provisions "are inherently material"); *Inamed Corp. v. Kuzmak*, 275 F. Supp. 2d 1100, 1125 (C.D. Cal. 2002) ("There is no doubt that release provisions are generally thought to be material terms of any settlement agreement.").  *See also Local No. 93, Int'l Ass'n of Firefighters, etc. v. Cleveland*, 478 U.S. 501, 522 (1986) ("Consent decrees are entered into by parties to a case after careful negotiation . . . .  [I]n exchange for the saving of cost and elimination of risk, the parties each give up something they might have won[.]" (cleaned up)). Kahalewai agreed to the *Nelson* Stipulation of his own volition, and the plain language of the Stipulation makes clear his intent to release his claims.

The release in the *Nelson* Stipulation plainly encompasses and bars the *Kahalewai* Complaint:  it is "unconditional" in its release of all claims that "were brought or could have been brought arising from or associated with the facts alleged in the instant Lawsuit and the laws, rules, or regulations in effect at the time of the execution of this Stipulated Judgment." *Nelson* Stip. at 9.  The claims

12

in the instant lawsuit were already brought in the first lawsuit:  in both cases, Kahalewai alleges that he applied for a License in May and September 2023 and that HPD has violated his rights in not authorizing him to carry a firearm in public. These are the same claims, arising from and associated with the same facts, involving the same parties, and under the same laws, rules, and regulations which were in effect at the time the Stipulated Judgment was executed.  The release bars the present lawsuit.

Additionally, the plain language of the release in the *Nelson* Stipulation is unambiguously broader than just those claims already raised; it also covers claims that *could have been brought* on the same set of facts.  *Nelson* Stip. at 9.  *See Wong v. Cayetano*, 111 Hawaiʻi at 481, 143 P.3d at 20 ("Here, we are left with no room for interpretation because the language of the Settlement Agreement is unambiguously sweeping and broad.").  Any claims Kahalewai raises here arise out of and/or are associated with the same facts, and could have been raised in *Nelson*. Those claims are now barred.

Kahalewai cannot succeed on the merits, and his motion should be denied.


//

//

//

13

**B.**     **Even if this Court addresses Kahalewai's substantive claims, he has failed to carry his burden to obtain injunctive relief.**

**1.**     <u>Kahalewai is not likely to succeed on the merits.</u>

**a.**     **Kahalewai's Second Amendment claim fails.**

*New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022), did not proclaim that all applicants – no matter their history of antisocial or violent conduct – were entitled to carry concealed weapons in public.  Instead, *Bruen* instructed that licensing requirements that include a *subjective evaluation of need*, analogous to the New York "proper cause" standard, are unconstitutional.  *Bruen* kept fully intact licensing systems that "are designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens' and "contain only 'narrow, objective, and definite standards' guiding licensing officials."[5]  *Id.* at 38 n.9; *see also id.* at 80 (Kavanaugh, J., concurring) ("[S]hall-issue regimes may require a license applicant to undergo fingerprinting, a background check, a mental health records check, and training in firearms handling and in laws regarding the use of force, among other possible requirements").

---

[5] Specifically, the Court explained that "[g]oing forward, therefore, the 43 States that employ objective shall-issue licensing regimes for carrying handguns for self-defense may continue to do so.  Likewise, . . . [other States] may continue to require licenses for carrying handguns for self-defense so long as those States employ objective licensing requirements like those used by the 43 shall-issue States."  *Bruen*, 597 U.S. at 80 (Kavanaugh, J., concurring).

The Supreme Court specifically cited – and approved – a licensing scheme similar to the City's current process.  The Court held that Connecticut's permitting scheme was not implicated by the Court's holding because "[a]lthough Connecticut officials have discretion to deny a concealed-carry permit to anyone who is not a suitable person, the 'suitable person' standard precludes permits only to those individuals whose conduct has shown them to be lacking the essential character of temperament necessary to be entrusted with a weapon."  *Bruen*, 597 U.S. at 13, n.1 (citations omitted).  Indeed, just two months before the *Bruen* Court counted Connecticut as among the acceptable 43 "shall issue" regimes, the Connecticut Supreme Court explained that suitability "depends on facts and circumstances that may be indicated but cannot be fully defined by law, whose probative force will differ in different cases, and must in each case depend largely on the sound judgment of the selecting tribunal."  *Stratford Police Dep't v. Bd. of Firearms Permit Exam'rs*, 343 Conn. 62, 82, 272 A.3d 639, 652 (2022) (cleaned up).

Following *Bruen*, the State Legislature changed the standards for issuing concealed carry licenses.[6]  *See* HRS § 134-9 (amended 2023).  So did HPD:  HPD promulgated administrative rules in 2022, *see* ECF 1-1, then amended those rules in 2024 (after the State Legislature amended the underlying statutes), *see* ECF 1-2.

---

[6] *See* Lau Decl. ¶ 4.

The 2024 HPD Rules require that the Chief of Police "consider the totality of the circumstances" – including six enumerated objective factors.  2024 Rules § 21-15-19(f), (f)(1), (f)(4), (f)(5) (ECF 1-2 PDF 15-16).  The 2022 Rules contained similar objective factors.  2024 Rules § 15-23 (ECF 1-1 PDF 15-16). These individualized determinations are constitutional and specifically endorsed by *Bruen*.  Indeed, the Court specifically cited Connecticut's licensing scheme – which includes a "suitable person" requirement –  with approval.  *See Bruen*, 597 U.S. at 13 n.1 (the "standard precludes permits only to those individuals whose conduct has shown them to be lacking the essential character of temperament necessary to be entrusted with a weapon." (citations omitted)).  The Court explicitly held that "nothing in our analysis should be interpreted to suggest the unconstitutionality of the 43 States' shall-issue licensing regimes. . . .  [T]hey do not necessarily prevent law-abiding, responsible citizens from exercising their Second Amendment right to public carry."  *Id.* at 39 n.9 (cleaned up).

That is precisely what HPD's rules do.  Since *Bruen*, HPD has issued over 1,973 LTCs.  Lau Decl., ¶4.  Kahalewai's application was among the first to be denied by HPD.  Lau Decl., ¶10.  HPD's Rules function precisely as designed: they have provided objective criteria to grant thousands of applications while precluding Kahalewai, "whose conduct has shown [him] to be lacking the essential character of temperament necessary to be entrusted," *Bruen*, 597 U.S. at 13 n.1,

from carrying a concealed deadly weapon in public.  Kahalewai is a textbook example of someone who is not a "suitable person" to be issued a License:  he has had two lengthy restraining orders issued against him, relatively recently, by two state court judges.  Gluck Decl., Ex. 7, 8.  HPD correctly applied its objective criteria and denied Kahalewai's application.  ECF 1-3.

The recent ruling in *United States v. Rahimi*, 144 S. Ct. 1889 (2024), supports HPD's decision.  As explained in Plaintiff's own brief, "*Rahimi's* core holding is '[a]n individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment.'"  ECF 2-1 at 10 (quoting *Rahimi*, 144 S. Ct. at 1903).  Nothing more need be said.  Kahalewai was deemed sufficiently dangerous by two state court judges to warrant long-term protective orders against him.  Gluck Decl., Exs. 7-8; HRS §§ 586-5.5, 604-10.5.

*History and Tradition:*  Plaintiff claims there is no historical tradition of disarming individuals like himself.  Plaintiff is mistaken, and *Rahimi* said so.  In *Rahimi*, the Court upheld a federal law that prohibits individuals subject to a domestic violence restraining order from possessing a firearm.  In reaching that conclusion, the Court clarified *Bruen*'s methodology and instructed that "the appropriate analysis involves considering whether the challenged regulation is consistent with the *principles* that underpin our regulatory tradition."  *Rahimi*, 144

17

S. Ct. at 1898 (emphasis added).  Central to this inquiry is the "why and how" the regulation burdens the Second Amendment right.  *Id.*  Notably, the Court held that "[t]he law must comport with the principles underlying the Second Amendment, but it need not be a dead ringer or a historical twin." *Id.* (internal quotation marks omitted).

"Since the founding, our Nation's firearm laws have included provisions preventing individuals who threaten physical harm to others from misusing firearms." *Id.* at 1896.  Looking to historical surety and "going armed" laws, the Court held that "the Government offer[ed] ample evidence that the Second Amendment permits the disarmament of individuals who pose a credible threat to the physical safety of others." *Id.* at 1898.  Specifically, the Court explained that surety laws targeted the misuse of firearms, *id.*, and that "going armed" laws "provided a mechanism for punishing those who had menaced others with firearms" with the "forfeiture of the arms." *Id.* at 1900-01.  *Rahimi* supports HPD's decision here.

Similarly, the Ninth Circuit's pre-*Rahimi* decision in *United States v. Perez-Garcia*, 96 F.4th 1166 (9th Cir. 2024) – also relied upon by Kahalewai – supports HPD's position.  The Court reviewed the "lengthy and extensive" history and tradition of:

> disarming individuals who are not law-abiding,
> responsible citizens. In particular, the historical record

> reflects that legislatures have long disarmed groups or
> individuals whose possession of firearms would pose an
> unusual danger, beyond the ordinary citizen, to
> themselves or others.

*Id.* at 1186-87.  HPD has good reason to believe that an individual with multiple

recent restraining orders would be a danger if allowed to carry a firearm outside

the home:  "More than half of mass shootings between 2014-2019 were domestic

violence-related and in more than two-thirds of mass shootings the perpetrator

either killed at least one partner or family member or had a history of domestic

violence."  BWJP, "Research at the Intersection of Intimate Partner Violence and

Firearms" (2024).[7]  The City relies upon the historical record, as recited in *Rahimi*,

*Bruen*, and *Perez-Garcia*, to support its history and tradition of these regulations

that allow the government to disarm dangerous individuals.[8]

Kahalewai attempts to distinguish *Rahimi* by arguing that, unlike 18 U.S.C.

§ 922(g)(8) (the statute at issue in *Rahimi*), the denial of his License application

was based on lapsed restraining orders.  This distinction is groundless.  The Court

upheld Section 922(g)(8) because it "fit[] comfortably" within the tradition of

disarming individuals "who threaten physical harm to others from misusing

---

[7] Available at https://bwjp.org/wp-content/uploads/2024/06/Research-at-the-Intersection-of-Intimate-Partner-Violence-and-Firearms.pdf.

[8] The City also disputes Kahalewai's assertion that the proper date for analysis is 1791, rather than 1868, given that neither the Supreme Court nor the Ninth Circuit has decided this question.

firearms." *Id.* at 1896-97.  Kahalewai reads a temporal element into the Court's

opinion that does not exist; nothing in *Rahimi* depended on the in-force nature of

the restraining orders against him.  Rather, the question was whether persons who

"threaten physical harm" may be disarmed.  In the instant case, a Hawaiʻi state

judge ruled that "a protective order [was] necessary to prevent domestic abuse or a

recurrence of abuse."  Gluck Decl., Ex. 8 (formatting altered).

Further, HPD's Rules do not permanently ban Kahalewai from carrying

firearms in public.  The Rules of the Chief contain a 10-year lookback for certain

items, with the express instruction that the Chief shall "giv[e] more weight to

incidents that are serious or recent, and less weight to incidents that are minor or

occurred in the distant past."  2024 Rules, § 21-15-19(f).  And unlike § 922(g)(8)

(which prohibits *possession* of any firearms), HPD has not prevented Kahalewai

from possessing firearms.  He was only denied the ability to carry his firearms,

concealed, in public.  *See* 2024 Rules, § 21-15-15(c)(3) (containing a *three*-year

lookback for issuing Permits to Acquire firearms, rather than a *ten*-year lookback

for Licenses to Carry).

Two state court judges previously determined that Kahalewai posed a

credible threat to others' safety.  HPD, as permitted by *Bruen* and *Rahimi*,

considered these objective factors and ultimately found that allowing him to carry

a firearm in public would present a danger to the community.  This determination was lawful.

**b.      Plaintiff's due process claim is baseless.**

Even if Kahalewai were entitled to some process, the City provided the process that was due.  There is a clear administrative process set forth in both the 2022 and 2024 Rules.  *See* 2024 Rules, § 21-15-28; 2022 Rules, § 15-28.

"Due process protections extend only to deprivations of protected interests." *Shinault v. Hawks*, 776 F.3d 1027, 1030 (9th Cir. 2015).  Once a protected interest has been determined, courts apply the three-part balancing test from *Mathews v. Eldridge*, 424 U.S. 319 (1976) "to determine whether a pre-deprivation hearing is required and what specific procedures must be employed."  *Shinault*, 776 F.3d at 1030.  Specifically, courts consider:  "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest. . . ." *Mathews*, 424 U.S. at 335.  Here, evaluation of the *Mathews* factors indicate that a pre-denial hearing is not required and that Kahalewai has failed to sufficiently allege a due process violation.

Even if Kahalewai has a cognizable private interest,[9] the remaining two factors weigh heavily in the City's favor.

As to the second factor, the risk of erroneous deprivation is low. Indeed, it is unclear what additional "procedural safeguards" Kahalewai even wants here: because Kahalewai did not have a License in the first place, there is no meaningful distinction between a "pre-deprivation" and "post-deprivation" process. No matter what Kahalewai calls it, once HPD determined that he was not entitled to a License, he was given notice and an opportunity to be heard. Perhaps Kahalewai wants the City to issue a License and then immediately have a hearing to take it away, but this is nonsensical.

Additionally, *Bruen* explicitly endorses permitting schemes that utilize discretionary factors, including ones that incorporate a "suitable person" standard. *See Bruen*, 597 U.S. at 13 n.1 (citations omitted). *Rahimi* made clear that an individual found to pose a threat to the physical safety of others may be disarmed. *Rahimi*, 144 S. Ct. at 1896. HPD conducts a thorough background check and applies objective factors to determine whether an applicant should be denied – and HPD has granted over 1,973 applications so far, Lau Decl., ¶4. Again, the risk of erroneous deprivation is low.

---

[9] He does not, because he does not meet the statutory criteria for a License.

As to the third factor, the City has a significant public safety interest in prohibiting dangerous individuals from carrying firearms in public.

Kahalewai was notified of the denial, and he was given an opportunity for a prompt hearing.  This satisfies due process.  *See Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("It has been said so often by this Court and others as not to require citation of authority that due process is flexible and calls for such procedural protections as the particular situation demands.").

### c.   *Monell* bars claims for any undefined "custom."

The City may be held liable for constitutional injuries caused by its employees only if the employees act pursuant to a City policy or custom.  *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978).  Kahalewai points to the City's administrative rules, but he already challenged those rules – both facially and as applied – in *Nelson*.  He cannot challenge them again here.

In this case, it is unclear whether Kahalewai challenges any other supposed custom or policy.  To the extent it does, such a claim would fail:  under a *de facto* policy or custom theory of liability, there must be a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity*." Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (citation and internal quotation signals omitted).  "The custom must be so 'persistent and widespread' that it constitutes a 'permanent and well settled city policy.'" *Id.* (quoting *Monell*,

23

436 U.S. at 691).  Further, the Ninth Circuit has repeatedly held that a plaintiff who alleges only one or two instances of an alleged constitutional violation cannot sustain a Monell claim based on policy or custom.  *See Meehan v. Cnty. of Los Angeles*, 856 F.2d 102, 107 (9th Cir. 1988); *Trevino*, 99 F.3d at 918 (citing *Meehan*).  *See also L.A. Cnty. v. Humphries,* 562 U.S. 29, 34 (2010) ("We conclude that *Monell*'s holding applies to § 1983 claims against municipalities for prospective relief as well as to claims for damages.").

Kahalewai's Complaint fails to meet the high burden of a *Monell* claim.  He appears to take issue with some nebulous and unidentified policy, but if he is challenging anything other than the Rules themselves (which he can't do because of the *Nelson* Stipulation), he has failed to identify what specific policy or custom is being challenged – let alone explain how such policy or custom amounted to deliberate indifference.[10]  To the extent Kahalewai relies on some "custom" other than the City's Rules, that claim fails.

### 2. <u>Kahalewai will not suffer irreparable harm</u>.

Kahalewai has not established that he will suffer irreparable harm absent an injunction.  To prevail on this factor, "plaintiffs must establish that irreparable

---

[10] He also fails to allege how the rules themselves and/or HPD's actions are deliberately indifferent or the moving force behind his alleged injuries, and his lawsuit also fails on these bases as well.

harm is likely, not just possible." *All. For The Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).  Kahalewai's claims miss the mark.  He states only that he "will suffer irreparable harm because he will not be able to exercise his constitutional right to carry a firearm unless a preliminary injunction is granted." ECF 2-1 at 21.  Kahalewai is wrong, because he assumes a boundless Second Amendment right.  The Supreme Court has been clear that "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *District of Columbia v. Heller,* 554 U.S. 570, 626 (2008); *see also Bruen*, 597 U.S. at 80 ("[T]he Second Amendment allows a variety of gun regulations[.]"); *Rahimi*, 144 S. Ct. at 1897 ("we recognized that the [Second Amendment] right was never thought to sweep indiscriminately.").  Since the nation's founding, the right to bear arms has been subjected to rules and regulations.  *See id.*  A lawful restriction of one Second Amendment right does not constitute irreparable harm.

Kahalewai's application was properly denied based on his past court-issued restraining orders.  Per the HPD Rules, he never was entitled to a License and thus has suffered no harm.

### 3.   The public interest and balance of equities weigh in the City's favor.

When the government is a party to the lawsuit, courts consider the balance of equities and public interest together.  *See Envt'l Prot. Info. Ctr. v. Carlson*, 968

F.3d 985, 991 (9th Cir. 2020).  "The balance of equities concerns the burdens or hardships to [Plaintiffs] compared with the burden on Defendants . . . . The public interest mostly concerns the injunction's impact on non-parties rather than parties." *Porretti v. Dzurenda*, 11 F.4th 1037, 1050 (9th Cir. 2021) (citations omitted).  Here, both elements favor not issuing an injunction.  Any "harm" to Kahalewai is of his own creation and is within constitutional bounds.  And, to the extent any harm is cognizable at all, it pales in comparison to the public interest in maintaining public safety by ensuring that dangerous individuals are not permitted to carry concealed weapons.  Public interest is served by ensuring that all applicants comply with Hawai'i law and HPD's licensing system.

### C. Consolidation pursuant to Rule 65(a)(2) is not warranted.

While the City recognizes the importance of efficiency, consolidation is premature and will not result in the preservation of judicial resources.  Although Kahalewai dresses the Complaint up as presenting pure questions of constitutional law, there are factual issues in dispute[11] that must first be reconciled through discovery.  For example, the timeline and exact nature of Kahalewai's prior restraining orders is highly relevant to each of Plaintiff's claims.  *See Yamada v.*

---

[11] There are no factual issues in dispute with respect to the release of claims in the previous lawsuit, however, and the City is entitled to summary judgment on that basis.

*Weaver*, 2012 WL 6019121, at *6 (D. Haw. Nov. 30, 2012) (recognizing that the presence of "factual issues and a need for discovery" as reasons to deny a motion to consolidate) (vacated and remanded on other grounds in *Yamada v. Snipes*, 604 Fed. App'x 579 (9th Cir. 2015) (mem. op.)).  A trial on the merits is not warranted in this case at this time, and would be prejudicial to the City given the timing of Plaintiff's filings and the hearing.  The City respectfully requests that the Court decline to consolidate.

## V.  CONCLUSION

Kahalewai's motion for preliminary injunction should be denied.

DATED:  Honolulu, Hawai'i, August 19, 2024.

DANA M.O. VIOLA
Corporation Counsel

By /s/ *Daniel M. Gluck*
   DANIEL M. GLUCK
   JACQUELINE DE LEEUW HUANG
   PATRICIA SENDÃO
   Deputies Corporation Counsel

Attorneys for Defendant
CITY AND COUNTY OF HONOLULU

## VI.  CERTIFICATE OF WORD COUNT

Pursuant to L.R. 7.4, I certify that this brief contains 6,218 words, calculated using Microsoft Word's word count, and therefore complies with Local Rule 7.4(b).  This includes headings, footnotes, and quotations, and excludes the case caption, table of contents, table of authorities, exhibits, declarations, certificate of counsel, and certificate of service.

DATED:  Honolulu, Hawaiʻi, August 19, 2024.

By: /s/ *Daniel M. Gluck*
DANIEL M. GLUCK
Deputy Corporation Counsel