IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| COREY KAHALEWAI, | ) | CIVIL NO. 24-00323 JAO-RT |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING DEFENDANT'S |
| vs. | ) | MOTION FOR SUMMARY |
| | ) | JUDGMENT (ECF NO. 16) AND |
| CITY AND COUNTY OF | ) | DENYING AS MOOT PLAINTIFF'S |
| HONOLULU, | ) | MOTION FOR PRELIMINARY |
| | ) | INJUNCTION (ECF NO. 2) |
| Defendant. | ) | |
| | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT (ECF NO. 16) AND DENYING AS MOOT PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION (ECF NO. 2)**

Before the Court are dueling motions: first, Plaintiff Corey Kahalewai's

("Kahalewai") Motion for a Preliminary Injunction, *see* ECF No. 2 seeking to

compel Defendant City and County of Honolulu ("County") to issue him a

concealed carry firearm permit and to prevent the County from denying that

license on various grounds; second, the County's Motion for Summary Judgment

which contends that Kahalewai released the instant claims as part of a stipulation

in a prior lawsuit, *see* ECF No. 16.  Both parties oppose each other's motions.  *See*

ECF No. 14 (County's opposition); ECF No. 20 (Kahalewai's opposition).  For the

reasons stated below, the Court GRANTS the County's Motion for Summary

Judgment and DENIES AS MOOT Kahalewai's Motion for Preliminary

Injunction.

## I.   BACKGROUND

### A.   Facts

Kahalewai's counsel made it difficult to determine what facts are actually in dispute because their response to the County's Concise Statement of Facts does not comply with Rule 56(c).  *Compare* Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence . . . of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact"), *with* ECF No. 21 (responding to almost all of the County's facts by stating only "Deny" without citing any evidence).  The Court may consider these facts as undisputed.  *See* Fed. R. Civ. P. 56(e)(2).

### 1.   The *Nelson* Case

To understand the proceedings here, it is helpful to start with the prior lawsuit, *Nelson et al. v. Honolulu City and County*, Civ. No. 1:24-CV-00100 MWJS-RT.  In that case, on March 1, 2024, Kahalewai—along with three co-plaintiffs—sued the County, alleging that but for the County's unlawful and arbitrary policies and practices, Kahalewai would have obtained a Concealed Carry Permit ("CCP").  *Id.*, ECF No. 1 at ¶¶ 2, 9 ("*Nelson* Complaint").  More specifically, Kahalewai alleged that he had submitted two complete applications to

obtain a CCP to the Honolulu Police Department ("HPD"), one in May and the other in September 2023.  *Nelson* Complaint ¶¶ 64, 70–72.  He contended that the County delayed processing his CCP applications and in doing so prohibited him from carrying a firearm in public.  *See id.* ¶ 49 n.8 ("[I]f County merely shelves applications the applications are then effectively denied.  Thus, the applicant starts out without a [CCP] and remains that way and County can just allow applications to languish to continue to deprive and infringe upon applicant's applications[.]").  The *Nelson* Complaint alleged that the County had "flat-out denied Plaintiffs their rights to be armed outside of their homes by establishing an onerous permitting regime replete with subjective and discretionary decisions, poll tax-like fees, and as applicable to this lawsuit, egregious wait times designed to flout the Supreme Court's precedents."  *Id.* ¶ 10.  He challenged the County's 2022 administrative rules governing CCP applications (under which he applied for a CCP) as unconstitutional violations of the Second and Fourteenth Amendments, both facially and as applied.  *See, e.g., id.* ¶¶ 43, 108–09.  He also attacked HPD's allegedly unconstitutional use of discretion in analyzing his two CCP applications.  *See id.* ¶¶ 10, 27 & n.1, 49 & n.8, 50, 64, 89.

After the *Nelson* Complaint was filed, the County denied Kahalewai's two CCP applications on March 20, 2024.  ECF No. 1-3 (Denial Letter, Ex. 3); ECF No. 21 ¶ 14.  The Denial Letter explained that given Kahalewai's "history of

alleged domestic violence and involvement in crimes of violence within the ten years preceding the applications as well as the issuance of two court orders for protection within this timeframe," the County could not approve his applications. ECF No. 1-3 at 2. In its initial evaluation of the CCP applications, the County was governed by the 2022 administrative rules, but after January 1, 2024—and at the time of the Denial Letter—the amended 2024 rules governed. *See* ECF No. 21 ¶ 13 (citing ECF No. 17-7 (2022 rules); ECF No. 17-8(2024 rules)).

Thereafter, on May 10, 2024, Kahalewai and the other plaintiffs in *Nelson* settled their case against the County. That day, District Judge Micah W. J. Smith approved and ordered a stipulation and stipulated judgment with the following release provision:

> With the exception of Plaintiffs' claim for attorneys' fees and/or costs, Plaintiffs unconditionally release, acquit, and discharge the City and County of Honolulu and all its employees and agents from all injuries, claims, damages, and causes of action that were brought or could have been brought arising from or associated with the facts alleged in the instant Lawsuit and the laws, rules, or regulations in effect at the time of the execution of this Stipulated Judgment. No other claims, other than for attorneys' fees and costs, remain outstanding in this litigation. All parties who have appeared in this action have signed this Stipulated Judgment.

Stipulation and Stipulated Permanent Injunction in *Nelson, et al. v. Honolulu City and County*, Civ. No. 1:24-CV-00100 MWJS-RT (ECF No. 25 at ¶ 2j) ("*Nelson Stipulation*"). Importantly, it is undisputed that the County's 2024 administrative

4

rules were in effect at the time of the *Nelson* Stipulation.  *See* ECF No. 21 ¶ 13; *see also* ECF No. 1-1 (2022 rules); ECF No. 1-2 (2024 rules).

### 2.    The Instant Case

After receiving the Denial Letter and settling *Nelson*, Kahalewai brought the instant lawsuit on July 31, 2024.  ECF No. 1.  In this case, as in the *Nelson* matter, Kahalewai alleges that he submitted all required application paperwork in the May and September 2023 applications, *see* ECF No. 1 ¶¶ 66, 68, and that the County's unlawful and arbitrary practices have denied him a CCP, *id.* ¶¶ 1, 60.  Similarly, the instant Complaint also alleges that the County has "flat-out denied Plaintiff his right to be armed outside of his home by establishing an onerous permitting regime replete with subjective and discretionary decisions, poll tax-like fees, and . . . discretionary decisions that rely on unconstitutional reasons to deny [CCPs] and designed [sic] to flout the Supreme Court's precedents."  ECF No. 1 ¶ 7.

Kahalewai has again alleged that his two CCP applications had been pending since 2023 and that the County was unlawfully prohibiting him from carrying a firearm in public.  *See Nelson* Complaint ¶¶ 2, 8, 10, 27 n.1, 35–36, 46–47, 49 & n.8, 50, 64, 68–72, 89 n.12, 99–100, 102, 109; ECF No. 1 ¶¶ 1, 5, 7, 34–35, 46, 49

& n.16, 59–61, 65–68, 85–86, 88, 97–98.[1]  And again he challenges the County's administrative rules—those in effect at the time of the *Nelson* Stipulation—governing CCP applications as unconstitutional violations of the Second and Fourteenth Amendments, both facially and as applied.  *See, e.g.*, ECF No. 1 ¶ 61.  He also continues to attack HPD's allegedly unconstitutional use of discretion in analyzing his May and September applications.  ECF No. 1 ¶¶ 6, 7, 8 and n.3, 14 n.4, 49 and n.16, 50, 58–60, 87, 97.

## B.   Procedural History

Kahalewai filed this lawsuit on July 31, 2024, along with the Motion for Preliminary Injunction.  ECF Nos. 1, 2.  The County timely opposed the Motion for Preliminary Injunction, ECF No. 14, and answered the Complaint, ECF No. 15.  Kalahawei filed a reply,  ECF No. 19, and also submitted a notice of supplemental authority, ECF No. 24.

---

[1]  The County cites these paragraphs in its Concise Statement of Facts for the proposition that Kahalewai makes the same claims here as he did in *Nelson*.  While Kahalewai indicated that he denies some of these citations, ECF No. 21 ¶ 4, the Court is baffled as to what he means—the denied paragraphs are from his own Complaint in the instant case.  And he has not offered any evidence to support his denials.  Moreover, he later says he denies the citations from the *Nelson* Complaint "as indicated above" but he actually explicitly *admitted* the citations from the *Nelson* Complaint.  *See* ECF No. 21 ¶¶ 3, 7.  In any event, the Court agrees that, on the face of the two complaints, the cited paragraphs support the proposition that the two lawsuits allege nearly identical claims.  *See* Fed. R. Civ. P. 56(e); *Bator v. Hawaii*, 39 F.3d 1021, 1026 (9th Cir. 1994) (If the factual context makes the opposing party's claim implausible, that party must offer more persuasive evidence than otherwise necessary to show there is a genuine issue for trial.).

On August 20, 2024, the County filed the Motion for Summary Judgment, ECF No. 16, along with the requisite Concise Statement of Facts, ECF No. 17. Kahalewai opposed the Motion for Summary Judgment, ECF No. 20, and filed a Concise Statement of Facts in Opposition ("Concise Statement"), ECF No. 21, which violates Local Rule 56.1 and this Court's General Civil Case Procedures. As noted, Kahalewai's Concise Statement fails to assert in a separate section "any additional facts the party believes the court should consider, set forth in the same manner as in the movant's concise statement," LR 56.1(e), and it fails to explain *why* indicated facts are disputed or denied.  *See* Fed. R. Civ. P. 56(c), General Civil Case Procedures Before Judge Otake.  Indeed, much of Kahalewai's Concise Statement consists of conclusory denials and provides no evidence to support those denials.  Thus, the facts he denies with no explanation or citation to evidence are deemed undisputed.  *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884 (1990); Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994).  In any event, the Court can rely solely on the plain language of the *Nelson* Complaint, the instant Complaint, and the *Nelson* Stipulation to resolve the Motion for Summary Judgment.

The County replied and filed a Response to Opposing Concise Statement of Facts.  ECF Nos. 25, 26.  The Court held a hearing on the Motion for Preliminary Injunction and the Motion for Summary Judgment on September 12, 2024.

## II.    LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  "A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  In a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party.  *See State Farm Fire & Cas. Co. v. Martin*, 872 F.2d 319, 320 (9th Cir. 1989) (per curiam).

Once the moving party has met its burden of demonstrating the absence of any genuine issue of material fact, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial.  *See T.W. Elec.*, 809 F.2d at 630; Fed. R. Civ. P. 56(c).  The opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to

support its legal theory. *See Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). The nonmoving party cannot stand on its pleadings, nor can it simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec.*, 809 F.2d at 630.

If the nonmoving party fails to assert specific facts beyond the mere allegations or denials in its response, summary judgment, if appropriate, shall be entered. *See Lujan*, 497 U.S. at 884; Fed. R. Civ. P. 56(e). There is no genuine issue of fact if the opposing party fails to offer evidence sufficient to establish the existence of an element essential to that party's case. *See Celotex*, 477 U.S. at 322; *Citadel*, 26 F.3d at 964 (citing *id.*).

In considering a motion for summary judgment, "the court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec.*, 809 F.2d at 631 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)) (footnote omitted). Inferences must be drawn in favor of the nonmoving party. *See id.* However, when the opposing party offers no direct evidence of a material fact, inferences may be drawn only if they are reasonable in light of the other undisputed background or contextual facts and if they are permissible under the governing substantive law. *See id.* at 631–32. If the factual context makes the

9

opposing party's claim implausible, that party must come forward with more persuasive evidence than otherwise necessary to show there is a genuine issue for trial. *See Bator*, 39 F.3d at 1026 (9th Cir. 1994) (citing *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987)).

### III.   DISCUSSION

The County's Motion for Summary Judgment contends that the *Nelson* Stipulation precludes Kahalewai from pursing the instant lawsuit. ECF No. 16 at 4–5. The Court agrees because the *Nelson* Stipulation is indeed an enforceable settlement agreement. "An agreement to settle a legal dispute is a contract and its enforceability is governed by familiar principles of contract law." *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989). "Enforceability of these compromise agreements is favored in the law." *Id*.

"The interpretation of a settlement agreement is governed by principles of state contract law. This is so even where a federal cause of action is 'settled' or 'released.'" *Botefur v. City of Eagle Point*, 7 F.3d 152, 156 (9th Cir. 1993) (citations omitted). Hawai'i law provides that "[c]ontract terms are interpreted according to their plain, ordinary, and accepted sense in common speech." *Hawaiian Ass'n of Seventh-Day Adventists v. Wong*, 130 Hawai'i 36, 45, 305 P.3d 452, 461 (2013). The parties' disagreement as to the meaning of a term does not render clear language ambiguous. *See State Farm Mut. Auto. Ins. Co. v. Fermahin*,

10

73 Haw. 552, 556, 836 P.2d 1074, 1077 (1992); *Hawaiian Ins. & Guar. Co. v. Chief Clerk of First Cir. Ct.*, 68 Haw. 336, 341, 713 P.2d 427, 431 (1986). "[W]hen the terms of a contract are definite and unambiguous there is no room for interpretation." *Wong v. Cayetano*, 111 Hawai'i 462, 481, 143 P.3d 1, 20 (2006) (cleaned up).  In the absence of ambiguity, "a question of construction arising upon the face of the instrument is for the court to decide." *Found. Int'l, Inc. v. E.T. Ige Constr., Inc.*, 102 Hawai'i 487, 497, 78 P.3d 23, 33 (2003) (citations omitted).

"In order to be enforceable, a settlement agreement must have the traditional elements of a contract: offer, acceptance, consideration, and parties who have the capacity and authority to enter into the agreement." *Kaiaokamalie v. Matson Terminals, Inc.*, 2016 WL 7476336, at *4 (D. Haw. Dec. 29, 2016) (citing *Amantiad v. Odum*, 90 Hawai'i 152, 162, 977 P.2d 160, 170 (1999)).  Additionally, "[a] properly executed settlement agreement generally precludes future litigation for its parties." *State Farm Fire & Cas. Co. v. Pac. Rent-All, Inc.*, 90 Hawai'i 315, 323, 978 P.2d 753, 761 (1999).  And the Hawai'i Supreme Court routinely upholds release provisions as binding terms of settlement agreements.  *See, e.g.*, *Gossinger v. Ass'n of Apartment Owners of Regency of Ala Wai*, 73 Haw. 412, 416–19, 835 P.2d 627, 630–31 (1992).

Here, the *Nelson* Stipulation release provision is "unconditional[]" and, with the exception of claims for attorneys' fees and costs, it releases the County "from

all injuries, claims, damages, and causes of action that were brought or could have been brought arising from or associated with the facts alleged in the instant Lawsuit and the laws, rules, or regulations in effect at the time of the execution of this Stipulated Judgment." *Nelson* Stipulation ¶ 2j.  The Court finds that language unambiguous and clear.  It precludes future lawsuits brought by any of the *Nelson* plaintiffs—including Kahalewai—against the County that are derived from the same facts as alleged in *Nelson* or that are closely related to ("associated with") the facts alleged in *Nelson* and that arise from or are associated with the County's 2024 rules governing CCP applications.

Turning to the contract elements, by all accounts, Kahalewai voluntarily agreed to settle *Nelson* via the *Nelson* Stipulation, including agreeing to the release provision.  ECF No. 21 ¶¶ 5–6 (admitting that he settled *Nelson* via the *Nelson* stipulation).  That provision was a material term of the exchange between the parties—in return for the release provision, the County agreed to process CCP applications in a particular manner.  *See generally Nelson* Stipulation; *see also Abbott Lab'ys. v. Alpha Therapeutic Corp.*, 164 F.3d 385, 388 (7th Cir. 1999) (release provisions "are inherently material"); *Doi v. Halekulani Corp.,* 276 F.3d 1131, 1138 (9th Cir. 2002) (referencing dismissal of the case with prejudice and a release as among the material terms of a settlement agreement placed on the record); *Inamed Corp. v. Kuzmak*, 275 F. Supp. 2d 1100, 1125 (C.D. Cal. 2002)

("There is no doubt that release provisions are generally thought to be material terms of any settlement agreement."). The parties' capacity to enter into the *Nelson* Stipulation has not been disputed. Further, all parties had authority to enter into the agreement and were represented by counsel. In short, the *Nelson* Stipulation's release provision is an enforceable and material contractual term under state law.

With the understanding that the *Nelson* Stipulation is an enforceable contract, the Court next considers what, exactly, its release provision means for this case. The Court is "left with no room for interpretation because the language of the [*Nelson* Stipulation] is unambiguously sweeping and broad." *Wong*, 111 Hawai'i at 481, 143 P.3d at 20. The Court concludes that the *Nelson* Stipulation plainly and unambiguously bars this lawsuit, which is an action that "[was] brought or could have been brought arising from or associated with the facts alleged in [*Nelson*] and the laws, rules, or regulations in effect at the time of the execution of [the *Nelson* Stipulation]." *Nelson* Stipulation 2j. As described above, many of the allegations in the instant case were already brought in *Nelson*, and certainly the facts that gave rise to *Nelson* give rise to this case, as do the rules in effect at the time of the *Nelson* Stipulation:

- In both cases, Kahalewai claims that his CCP applications had been pending since 2023 and that the County was unlawfully prohibiting him from carrying a firearm in public. *See Nelson* Complaint ¶¶ 2, 8, 10, 27 n.1, 35–36, 46–47, 49 & n.8, 50, 64, 68–72, 89 n.12, 99–100,

13

102, 109; ECF No. 1 ¶¶ 1, 5, 7, 34–35, 46, 49 & n.16, 59–61, 65–68, 85–86, 88, 97–98;[2]

- In both cases, Kahalewai sued the County because the County had not issued him a CCP after he submitted application materials in May and September 2023—here, he adds the Denial Letter.  *See id.*;

- In both cases, he attacks HPD's discretion in evaluating his CCP applications as unconstitutional.  *See Nelson* Complaint ¶¶ 10, 27 & n.1, 49 & n.8, 50, 64, 89; ECF No. 1 ¶¶ 6, 7, 8 & n.3, 14 n.4, 49 & n.16, 50, 58–60, 87, 97;[3]

- In both cases, he challenges the County's administrative rules governing CCP applications as unconstitutional violations of the Second and Fourteenth Amendments, both facially and as applied.[4] *See, e.g.*, ECF No. 1 ¶ 61; *Nelson* Complaint ¶¶ 108–09.

---

[2] Kahalewai denies that he alleges here that his CCP applications had been pending since 2023 and that the County was unlawfully preventing him from carrying a gun in public.  ECF No. 21 ¶ 4.  It is apparent on the face of the Complaint that he does, in fact, make those allegations.  A mere denial does not create a genuine dispute of material fact.  *See* Fed. R. Civ. P. 56(e); *Lujan*, 497 U.S. at 884; *Celotex*, 477 U.S. at 322; *Citadel*, 26 F.3d at 964.  Because Kahalewai offers no evidence to support his conclusory denial and because the Complaint makes opposition implausible, the Court considers this undisputed.  *Bator*, 39 F.3d at 1026.

[3] Kahalewai denies that in both cases he attacks HPD's discretion to analyze his CCP application, but he admits each of the factual citations from the two complaints that support this proposition.  ECF No. 21 ¶ 9.  A mere denial does not give rise to a genuine dispute of material fact.  *See* Fed. R. Civ. P. 56(e); *Lujan*, 497 U.S. at 884; *Celotex*, 477 U.S. at 322; *Citadel*, 26 F.3d at 964.  The Court concludes that he has admitted the relevant facts and, because Kahalewai offers no evidence to support his denial and because the factual context makes opposition implausible, the proposition is true.  *Bator*, 39 F.3d at 1026.

[4] The Court did not find persuasive Kahalewai's counsel's attempt at the hearing to distinguish between challenging the rules *generally* in *Nelson* and challenging the rules *specifically* in the instant case.  To put it bluntly, they are the same rules.

- The rules under which the County denied his CCP applications were in effect at the time of the *Nelson* Stipulation on May 10, 2024. *See* ECF No. 21 ¶ 13; *see also* ECF No. 1-1 (2022 rules); ECF No. 1-2 (2024 rules).

Kahalewai attempts to distinguish the factual basis of the instant case from *Nelson* by pointing out that this case focuses on the denial—not delay—of his CCP applications, which occurred after the *Nelson* Complaint was filed. ECF No. 20 at 5–6. But Kahalewai received the Denial Letter from HPD nearly two months before he signed the *Nelson* Stipulation. ECF No. 1 ¶ 67; ECF No. 21 ¶ 14 (admitted). And that letter explained the reasons for the denial. ECF No. 1-3. According to HPD Captain Carlene Lau's declaration, the denial was based on the same facts as the delay in processing his CCP applications, on which *Nelson* was focused. "[B]oth the alleged delay in processing the [CCP] application and the denial of the [CCP] application were based on the same thing: the background check. Kahalewai would have been authorized to carry a firearm in public no later than December 31, 2023 but for the background check." ECF No. 17-1 ¶ 14 (Lau Decl.); *see also id.* ¶ 8 ("[I]n 2023 we had decided to recommend that Kahalewai's application be denied . . . based on the background items listed above and the then-effective Rules[.]"); *id.* ¶ 6 ("On June 8, 2023, Records ran a background check on Kahalewai. That background check revealed the information that Kahalewai made public in his court filings, in ECF No. 1-3 at page 2."). HPD determined that Kahalewai did not meet the County's requirements (both the 2024 rules effective at

15

the time of denial and the 2022 predecessor rules effective at the time he applied) for issuing a CCP. *Id.* ¶¶ 7–9. And again, it is undisputed that the County's 2024 administrative rules under which HPD denied Kahalewai's CCP applications were in existence at the time of the *Nelson* Stipulation. *See* ECF No. 21 ¶ 13; *see also Nelson* Stipulation ¶ 2j (releasing claims "arising from or associated with . . . the laws, rules, or regulations in effect at the time of the execution of this Stipulated Judgment"). While Kahalewai denies the facts in Lau's declaration, *see* ECF No. 21 ¶¶ 16–18, 20–21, as with his other denials, he simply does not explain why nor offer additional evidence to support his denial, and so does not create a genuine issue of material fact. *See generally* ECF Nos. 20, 21; *see* Fed. R. Civ. P. 56(e); *Lujan*, 497 U.S. at 884; *Celotex*, 477 U.S. at 322; *Citadel*, 26 F.3d at 964.

Kahalewai thus learned the reasons for his CCP denial prior to settling *Nelson*, and so was on notice that the released claims "arising from" and "associated with" the facts alleged in Nelson and the existing rules would include the claims in this lawsuit. *Nelson* Stipulation ¶ 2j. And in any event, what Kahalewai subjectively knew at the time he received the Denial Letter and signed the *Nelson* Stipulation is irrelevant—the release provision does not speak to his subjective knowledge but whether this case objectively arises from or is associated with the facts in *Nelson* and the rules then in effect. Both cases revolve around the same applications for a CCP that were evaluated negatively for the same reasons

under the rules that were in existence at the time Kahalewai signed the *Nelson* Stipulation.

Kahalewai also argues that construing the release provision to preclude this lawsuit would constitute an impermissible waiver of his constitutional rights.  ECF No. 20 at 7–11.  But waiver is irrelevant.  The question here is whether Kahalewai voluntarily released future claims associated with the facts in *Nelson* via settlement, which is a question of state contract law.  *See* Fed. R. Civ. P. 8(c)(1) (listing release and waiver as separate affirmative defenses); *see also Edwards v. Kia Motors of Am., Inc.*, 486 F.3d 1229, 1233 n.6 (11th Cir. 2007) (distinguishing between voluntary release as a "private agreement amongst parties which gives up or abandons a claim or right against whom the claim exists or the right is to be enforced" and a waiver, which is "unilateral in character" when "one party acting alone [] abandons his or her rights").

Moreover, the cases he cites are inapposite—all either relate to criminal defendants' rights or involve post-settlement changes in constitutional law.  *See* ECF No. 1 at 7–11 (citing *Brewer v. Williams*, 430 U.S. 387 (1977) (criminal defendant's waiver of right to counsel); *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389 (1937) (waiver of right to jury trial); *U.S. v. Gonzalez-Flores*, 418 F.3d 1093, 1102-03 (9th Cir. 2005) (criminal defendant's waiver of right to jury trial); *Gete v. INS*, 121 F.3d 1285 (9th Cir. 1997) (waiver of right to judicial review of

17

administrative decision); *Brookhart v. Janis*, 384 U.S. 1 (1966) (criminal defendant's right to cross-examine and confront the witnesses against him)); *Sambo's Restaurants, Inc. v. City of Ann Arbor*, 663 F.2d 686, 691 (6th Cir. 1981)[5] (finding impermissible waiver but expressly distinguishing "a situation where there is an agreement which is binding as a matter of state contract law"); *id.* at 692–93 (relying on a change in First Amendment caselaw, which post-dated the non-binding stipulation in that case); *Curtis Pub. Co. v. Butts*, 388 U.S. 130, 145 (1967) (also relying on a change in law and holding that a litigant could not waive a "known right before it was aware of [a later Supreme Court decision]" that made the right known).  No change in constitutional law occurred between the signing of the *Nelson* Stipulation in May 2024 and the filing of the instant case in July 2024, and contrary to Kahalewai's assertions, ECF No. 20 at 11, the denial of Kahalewai's CCP applications is not a change in law.  So as a matter of contract law, the *Nelson* Stipulation released the claims in this lawsuit.  And, even if the criminal cases he cites applied, Kahalewai "knowingly, voluntarily, and intelligently" agreed to the *Nelson* Stipulation, including the release provision, which plainly releases this case against the County.  *Gete*, 121 F.3d at 1293.

---

[5]  The Court acknowledges that the restaurant's name is a slur (the case involved offensive commercial speech) and uses it only for citation purposes.

18

Finally, Kahalewai further argues that he did not release claims related to the denial of his CCP applications, as the denial occurred after the *Nelson* Complaint was filed.  ECF No. 20 at 5–8, 11–12.  But under Hawai'i law, a release of future claims, including those based on conduct subsequent to the date of a settlement agreement, is enforceable—and here, the Denial Letter was sent and received *before* the *Nelson* settlement agreement.  *Larson v. Liberty Mut. Fire Ins. Co.*, 2020 WL 3714526, at \*7 (D. Haw. July 6, 2020), *aff'd,* 2022 WL 2828779 (9th Cir. July 20, 2022) (citing, *inter alia*, *Island Helicopters-Kauai, Inc. v. Tesoro Hawaii Corp.*, 130 Hawai'i 347, 310 P.3d 1048, 2012 WL 503799, at \*2–3 (App. Feb. 13, 2012) (unpublished) (upholding settlement and concluding consideration for it consisted of plaintiff's release of *future* claims, given such claims would not be barred as untimely because the defendant could conceivably be liable for a continuous tort or plaintiff "could experience a new . . . problem" that would restart the statute of limitations)).

Ultimately, the *Nelson* stipulation language unambiguously covers future claims, including those based on the denial of the two exact same CCP applications here.  Kahalewai expressly and "unconditionally" agreed to "release and  acquit, and discharge" the County from any claim, cause of action, or damages "that were brought *or could have been brought* arising from or *associated with the facts* alleged in the instant Lawsuit and *the laws, rules, or regulations in effect at the*

19

*time of the execution of this Stipulated Judgment.*"  *Nelson* Stipulation ¶ 2j

(emphases added).  Thus, Kahalewai agreed to release not only his actual claims in

*Nelson* but also all potential claims and causes of action that could arise out of the

County's handling of his CCP applications which, at the time of the settlement, had

been denied under rules and regulations effective at the time of the *Nelson*

Stipulation.  *See Island Helicopters-Kauai*, 2012 WL 503799, at *2–3 (interpreting

release of all claims "arisen, arising, or to arise out of the 'subject claims'" as

precluding plaintiff from "pursuing any potential claims against the [defendant]

related to the [same] problems" and observing this included if "Plaintiffs . . .

experience[d] a new . . . problem, which would start anew the running of the

statute of limitations"); *see also Larson*, 2020 WL 3714526, at *8.

The problem for Kahalewai is that he voluntarily, knowingly, and

intelligently signed an "unambiguously sweeping and broad" settlement agreement

that released any future claims arising from or associated with the facts and

applicable rules in *Nelson*.  *Wong*, 111 Hawaiʻi at 481, 143 P.3d at 20.  He could

have negotiated a settlement agreement that carved out claims related to the actual

denial—not delay—of his two CCP applications, of which he was aware, or that

left room for claims based on facts learned subsequent to the filing of the *Nelson*

Complaint.  Or he could have amended the *Nelson* Complaint to account for the

denial and refused to sign the *Nelson* Stipulation.  *See* Fed. R. Civ. P. 15(a)(1)

20

(allowing amendment within 21 days "as a matter of course"), 15(a)(2) (directing courts to "freely give leave to amend when justice so requires").  He did not do either.

In sum, Kahalewai voluntarily bound himself to a settlement that precludes this lawsuit.  Because that conclusion is apparent on the basis of the undisputed facts and because Kahalewai has failed to create any genuine issues of material fact, the Court grants the Motion for Summary Judgment in favor of the County.  It therefore denies as moot Kahalewai's request for a preliminary injunction.

## IV.    CONCLUSION

For the reasons stated above, the Court GRANTS the County's Motion for Summary Judgment, ECF No. 16, and DENIES AS MOOT Kahalewai's Motion for Preliminary Injunction, ECF No. 2.

IT IS SO ORDERED.

Dated: Honolulu, Hawaiʻi, September, 17 2024.



Jill A. Otake
United States District Judge

CIV. NO. 24-00323 JAO-RT, *Corey Kahalewai v. City and County of Honolulu*; ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 16) AND DENYING AS MOOT PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (ECF NO. 2)